CARWILE et al. v. CHILDRESS et al.
(No. 2106.)

(Court of Civil Appeals of Texas. Texarkana. May 20, 1919. Rehearing Denied June 5, 1919.)

1. CONSTITUTIONAL LAW. ⊜65—DELEGATION OF LEGISLATIVE POWER—STATUTE—SUBJECTION TO ADOPTION BY VOTE.

Acts 31st Leg. (2d Ex. Sess.) c. 14, including Vernon's Sayles' Ann. Civ. St. 1914, arts. 1006–1017, relating to street improvements, is not invalid because an attempt by the Legislature to delegate its power to make laws to the voters of cities and towns by permitting them to adopt statutory provisions relative to street improvements.

2. MUNICIPAL CORPORATIONS ⊜44—CONSTITUTIONAL PROVISION FOR SPECIAL CHARTER —EFFECT AS TO GENERAL ACTS.

Const. art. 11, § 5, declaring cities of more than 5,000 inhabitants may have their charters granted or amended by special act of the Legislature, did not deprive Legislature of the power to enact a general law applicable to the class of cities specified.

3. MUNICIPAL CORPORATIONS ⊜279—STREET IMPROVEMENTS — ADOPTION OF STATUTE BY POPULAR VOTE—IRREGULARITY AS TO NOTICE —RESOLUTION.

That no notice was posted of a city election to adopt Acts 31st Leg. (2d Ex. Sess.) c. 14, relating to street improvements, other than a copy of the resolution, or that the resolution "did not limit the qualification of the voters as provided in the act," were not such irregulari-

ties as would invalidate the election, where it was not shown that any one entitled to vote failed to do so because of such irregularity, or that any one not entitled to vote did so.

4. MUNICIPAL CORPORATIONS ☞408(1)—IMPROVEMENTS — ASSESSMENTS — CONFLICT BETWEEN CHARTER AND STATUTES.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1014, empowering the governing body of city to correct any mistake or irregularity in street improvement proceedings and assessments therefor, and for reassessment for invalidity, and article 1017, relating to city improvements and providing for the "front-foot plan," held not in conflict with the city charter (Sp. Acts 32d Leg. c. 51), providing for the "improvement district plan" for paving streets, but cumulative thereof.

5. MUNICIPAL CORPORATIONS ☞514(1) — STREET IMPROVEMENTS — ASSESSMENT OF ABUTTING PROPERTY OWNERS — RIGHT TO MAKE REASSESSMENT.

Where a street assessment was made after due notice to objecting abutting owner, and after he had an opportunity to be heard in opposition thereto, and it did not appear from the record that the sum assessed was in excess of what the city had a right to assess, held that the city was authorized to make reassessment or final assessment to correct a previous erroneous one.

Appeal from District Court, Kaufman County; J. R. Bond, Judge.

Suit by B. M. Childress against W. L. Carwile and others. Judgment for plaintiff canceling certificates against property for city improvements, and in favor of defendant City of Terrell as against the prayer of the defendants W. L. Carwile and the Trinity Portland Cement Company, and the defendants Carwile and the Cement Company appeal. Judgment reversed in part and affirmed in part, and judgment rendered for defendants Carwile and the Cement Company.

By article 28, § 2, of the charter granted to it by the act of the Legislature approved March 20, 1911 (Special Laws, pp. 508 to 569), the city of Terrell was authorized to pave its streets, etc., and—

"provide, by ordinance, for the manner of determining * * * the amounts of benefits to each parcel or abutting property by reason of any such improvements, * * * and of a fair and just proportion, and of the amount of costs of same to be paid by each abutting owner, and the amount of costs so adjudged shall be a personal liability against such owner as well as a tax lien and charge upon his abutting property."

And in article 29 of said charter it was provided that when the city should deem it necessary to pave any of its streets, and should be of the opinion that real estate "abutting on or in the vicinity of such proposed improvement" would be thereby specially benefited, and should deem it just for the owners of such real estate to pay the cost or a part of the cost of such paving, it (the city) should so declare by a resolution defining and creating an "improvement district" to include such real estate. The resolution was to direct the city engineer to prepare and submit an estimate of the cost of the paving proposed, and the city tax assessor and collector to report in writing the total assessed value of the real estate within such "improvement district." Before the paving should be "finally ordered," the city, by resolution or otherwise, was to determine how the costs of same should be paid— whether wholly by the owners of such real estate, or partly by them and partly by the city. After so much had been done the city was to give 10 days' notice to the owners of such real estate by publication in a newspaper, requiring them "to file in writing with the city secretary" any objections they might have—

"either to the making of such improvement, or improvements, or to the manner in which the cost of the same is to be paid, or to the manner in which said improvement district is constituted, or any other objections such persons * * * may desire to present."

If the owners of as much as one-half in value of the real estate in the district when so notified, objected, the proposed paving was to be abandoned. At or before the time when a contract for paving was awarded, the city, by resolution or ordinance, was to make provision for payment of the costs thereof. In doing so it was not to assess against any property owner a sum greater than one representing the amount of the increased value of his property by reason of the improvement.

At an election held April 1, 1912, the city of Terrell, by a vote of 297 to 31, adopted the act approved May 10, 1909 (General Laws, pp. 402 to 406), being chapter 11 of title 22, including articles 1006 to 1017, Vernon's Statutes, known as the "Street Improvement Statute." The act by its terms conferred on any city adopting it power to pave its streets, and in doing so to "select the materials and methods" therefor, to contract for the construction thereof, and to provide for the payment of the cost of such construction, either entirely by the city out of any of its funds available for the purpose, or in part out of such funds and in part by assessments against owners of property abutting on such streets. By other terms of the act the part assessed against the owners of property abutting on a street was not to exceed three-fourths the total cost of paving such street, and the sum assessed against any one owner was not to exceed the actual benefit to him in the enhanced value of his property by reason of the paving. No assessment of any part of the cost of the paving a street was to be assessed against an owner

of property abutting thereon until a "full and fair hearing," preceded by a reasonable notice thereof," had first been given to him.

In a resolution adopted October 21, 1913, the city of Terrell declared it "to be a public necessity" to pave the street within its limits known as "Griffith avenue." In said resolution the city further declared that the paving should be according to the plans and specifications of the city engineer, directed said city engineer to prepare a preliminary estimate of the cost of the paving, and directed the city secretary to "make the proper publication" of the resolution. It appears that the resolution was duly published as directed, but it does not appear from the record that the engineer, complied with the instruction to him to prepare an estimate of the cost of the paving. October 28, 1913, a resolution establishing the grade for Griffith avenue was adopted. On the same day a resolution was adopted designating 30 feet as the width of the part of the street to be paved; and on the same day another resolution was adopted providing for the paving of the street "according to the plans and specifications to be furnished therefor by the city engineer," specifying the material to be used, and further providing that the city should pay one-fourth the cost of such paving, and that owners of property abutting on the street should pay the remaining of such cost. "The proportion of said costs payable by the owners of said abutting property," it was recited,

"shall be assessed against the owners and against their said property in accordance with the terms of the general laws of the state of Texas, and in accordance with what is known as the front-foot plan or rule, as the frontage of the property of each owner is to the whole frontage of property on the street named to be paved, provided that if the application of this rule would, in the opinion of the city commissioners, in particular cases be unjust or inequitable, it will be the duty of the city commissioners to assess and apportion said costs in such proportion as it may deem just and equitable, having in view the special benefits in enhanced value to be received by such owners of said property, so as to produce a substantial equality of benefits by, and burdens imposed upon, each owner."

It was provided in the resolution that no assessment should be made against any such owner until after notice had been given to him as provided by the general laws of the state, and that no assessment against any such owner should be for a sum in excess of the benefits to his property in the enhanced value thereof due to the paving. But "no publication in any newspaper," it is recited in the statement of facts,

"was made of any notice of hearing to be given property owners on said street, either under the above resolution, or under any of the original proceedings with reference to said paving, or

the amount of the assessment to be made against abutting property owners."

November 18, 1913, the city advertised for bids for the paving, and afterward a bid submitted by the Bert Hahn Construction Company was accepted. Thereupon the city and said construction company entered into a contract whereby the construction company undertook to pave said street on terms and according to specifications agreed on and set out in the contract. July 14, 1914, the bond made by the construction company to secure a performance by it of its undertaking was presented to the city. August 18, 1914, the city secretary was instructed to write to owners of property abutting on Griffith avenue who were opposed to the paving in front of their property, and ask them to co-operate with owners who wanted the street paved, so as to avoid delay in the paving operations. November 3, 1914, appellee Childress advised the city he would not pay anything on account of the paving. August 3, 1915, the paving of the street having been completed, it was accepted by the city as a compliance with the undertaking of said construction company.

Shortly thereafter, to wit, on August 23, 1915, this suit was commenced. Appellee Childress was the plaintiff, and Bert Hahn, alleged to be the sole owner of the Bert Hahn Construction Company, W. L. Carwile, alleged to be the owner by assignment from said construction company of an interest in the contract for the paving of said street, and the city of Terrell, were the defendants. The relief appellee Childress sought was an injunction restraining said city from issuing certificates against him or his property for any part of the cost of said paving, and from—

"passing any resolution or order of any kind or character affecting the title to plaintiff's property (alleged to be homestead), or in any way creating any liability against this plaintiff for any portion of the cost of paving Griffith avenue."

Pending said suit, to wit, on September 14, 1915, the city adopted a resolution directing that assignable certificates for amounts specified, respectively assessed against owners of real estate abutting on said street, among which was the sum of $403.65 assessed against appellee Childress, be issued to said construction company; and accordingly, on September 17, 1915, a certificate covering said $403.65 assessed against said appellee was issued to said construction company. Said certificate was transferred by said construction company to said Carwile and the Trinity Portland Cement Company. Afterward, to remove a question made as to the validity of the proceedings resulting in the issuance of said certificate, based on the failure of the city to duly notify ap-

pellee Childress of such proceedings and give him an opportunity to be heard with reference thereto, said Carwile and said cement company—

"endeavored to get the city commission to hold such correction proceedings and pass such correction ordinances and resolutions as were necessary in order to constitute a compliance with the provisions and requirements of the general paving law."

Such action by the city was opposed by appellee Childress; but after long delay, to wit, on October 23, 1917, the city did act in the matter. On that day it adopted a resolution which, after reciting that it had directed the paving of said Griffith avenue; that specifications covering the paving had been made by its engineer; that advertisement for bids for the work had been made; that a bid made by the Bert Hahn Construction Company had been accepted; that the city engineer had prepared and filed a report showing the "cost payable by the owners of real estate abutting on said street," the "cost of such improvement by front foot of abutting property," the names of owners of such property, and "the total cost of such improvement to each parcel of property"; and that said report was considered by the city commission and duly approved—declared that—

"the city commission has finally determined to assess a part of the costs of said improvement against the owners and their property."

Provision was then made in the resolution for notice to, and a hearing of,

"all persons interested in said matter as to said assessments, and as to the amount to be assessed against each owner and his property, and as to the benefits to said property from said improvements, or any other thing in connection therewith."

It was provided that after hearing such owners the city should by an ordinance assess against them—

"such sums as shall be determined to be just and equitable, and that said assessment will be made in accordance with the front-foot plan or rule as the frontage of the owner is to the whole frontage to be improved, provided that if the said rule or plan shall be determined in any case to be inequitable, then the commission will adopt such rule of apportionment as shall be just and equitable, having in view the benefits to each owner, and the burdens to be imposed upon them, provided no assessment shall be made against any owner or his property in excess of the benefits to said property in the enhanced value thereof by means of such improvement."

It was recited in the resolution that its purpose was—

"to correct any mistake or irregularity which may exist in the proceedings heretofore had with reference to the foregoing improvement or the assessment of the cost thereof against abutting property and its owner, and to reassess against any abutting property and its owner the cost or part of the cost of said improvement according to law, and not in excess of the benefits in enhanced value of such property from such improvements."

After the time named in the resolution for a hearing of property owners concerned, of which due notice was given, on, to wit, November 6, 1917, the city adopted an ordinance whereby assessments were made against owners of real estate abutting on said Griffith avenue. Among the assessments was one for $403.65 against appellee Childress. The ordinance provided for the issuance of assignable certificates for the amounts of the assessments, and on November 26, 1917, a certificate covering the assessment made against appellee Childress was accordingly issued.

The trial was had on an amended petition filed by appellee November 16, 1917, after the adoption of the ordinance making the "final assessment" against him, and before the issuance of the "assignable certificate" covering such assessment. Having alleged in his said amended petition that the proceedings resulting in the issuance September 17, 1915, of the certificate covering the assessment against him, together with said certificate, were void because of failure on the part of the city, in particulars specified, to comply with the requirements of its charter, and having further alleged that the proceedings had by the city subsequent to the issuance of said certificate and before November 26, 1917, when the new certificate was issued, were void for reasons specified, appellee Childress prayed that said certificate issued September 17, 1915, be canceled, and that—

"all orders, resolutions, ordinances, or certificates heretofore passed or issued by the city of Terrell be annulled, and that this plaintiff have a writ of injunction restraining the city of Terrell and its managing officers from hereafter issuing any certificate against the property of this plaintiff by reason of the paving of Griffith avenue."

Bert Hahn did not answer the suit. In their answer Carwile and the Trinity Portland Cement Company, the latter having become a party defendant, asserted the validity of the certificate issued November 26, 1917, and, alleging that appellee Childress had made default in the payment of said certificate according to its terms, prayed judgment against him for the amount thereof, together with interest and attorney's fees as stipulated for therein; and further prayed, if for any reason it should be determined that they were not entitled to a recovery against appellee, that they have judgment against the city for the amount, principal, interest, and attorney's fees, of said certificate. The city answered, asserting, as said

Carwile and the cement company had, the validity of said certificate issued November 26, 1917, but denied liability to them in any event on account thereof or on account of said paving.

The trial was before the court without a jury, and resulted in a judgment in favor of appellee Childress against all the other parties, canceling the certificate issued September 17, 1915, as appellee had prayed for, and also canceling the certificate issued November 26, 1917, which he did not specifically pray for, and in favor of the city of Terrell as against the prayer of Carwile and the cement company for relief against it. The appeal against the judgment is by Carwile and the cement company so far as it is in favor of appellee Childress and the city against them, and by the city of Terrell so far as said judgment is in favor of appellee Childress against it.

Thompson, Knight, Baker & Harris and Alex F. Weisberg, all of Dallas, for appellants.

Morris Brin and R. L. Warren, both of Terrell, B. F. Word, of Dallas, Thos. R. Bond, of Terrell, and W. J. J. Smith, Jno. C. Robertson, and Geo. A. Robertson, all of Dallas, for appellees.

WILLSON, C. J. (after stating the facts as above). It is conceded that, because appellee did not have notice of nor an opportunity to be heard in the proceedings resulting in the assessment against him covered by the certificate issued September 17, 1915, he was not bound by same. Therefore if the judgment in his favor is erroneous, as claimed by appellants, it must be because appellee Childress was bound by the proceedings resulting in the reassessment covered by the certificate issued November 26, 1917.

Whether he was bound by those proceedings depended (1) on whether the statute (to wit, chapter 11 of title 22 of the Revised Statutes with reference to street improvements) under which they were had was a valid one; (2) on whether the city of Terrell, having a right to do so, had theretofore duly adopted said statute; (3) or whether, said city having the right and having adopted said statute, was thereby empowered to reassess against appellee Childress a part of the cost of the street improvement in question; and, if it was, (4) on whether the reassessment proceedings were in conformity to the requirements of said statute.

[1] That a contention like the one in appellee's brief, to wit, that the statute was invalid because an attempt by the Legislature to delegate its power to make laws to the voters of cities and towns, is not tenable, was determined by this court in Riley v. Town of Trenton, 184 S. W. 344, where Judge Hodges said:

"In voting to adopt certain statutory provisions, the voters do not in reality adopt the law; they merely bring about a situation to which the law by its terms has been made applicable. The law is the finished product of the Legislature, and it only awaits the existence of the conditions to which by its terms it is made applicable in order to be enforced."

[2] The question made as to the right of the city of Terrell by a referendum vote to adopt said statute at the time it did adopt same, to wit, April 1, 1912, seems to be predicated on the fact that it was then a city of more than 5,000 inhabitants, operating under a special charter. The amendment then in force of section 5 of article 11 of the Constitution declared that "cities having more than 5,000 inhabitants may have their charters granted or amended by special act of the Legislature," etc. That the effect of such a declaration in the Constitution was not to deprive the Legislature of power to enact a general law applicable to the class of cities specified was determined by the Supreme Court in Werner v. City of Galveston, 72 Tex. 22, 7 S. W. 726, 12 S. W. 159. The act there in question was one authorizing cities and towns by a vote to take control of public schools within their respective limits. In disposing of a contention made in the case Judge Gaines said:

"It is further claimed that the act is inoperative as to all cities having over 10,000 inhabitants, because of section 5 of article 11 of the Constitution, which provides that such cities 'may have their charters granted or amended by special act of the Legislature.' But we think it was not intended by this section to prohibit the Legislature from providing for the incorporation of such cities by general law, but to confer authority to grant special charters. We cannot presume that the framers of the Constitution meant to prohibit the lawmaking power from passing a general act in reference to a special matter which should apply alike to every municipal corporation in the state. No reason is seen for imposing any such restriction, and the prohibition will not therefore be implied."

[3] It is not contended in support of the judgment that the city of Terrell did not attempt to adopt said statute. On the contrary, it is in effect conceded that an election was held in said city April 1, 1912, to determine whether the statute should be adopted or not, and that at that election a majority of the votes cast were in favor of adopting it. The contention with reference to this phase of the case was and is that the requirements of the law were not complied with in holding the election, (1) in that "no notice thereof was posted other than a copy of the resolution" ordering it, and (2) in that said resolution "did not limit the qualification of voters as provided in the act." We will not stop to inquire whether the contention was supported by testimony in the record or not, for certainly such irregularities, if any such

occurred, would not have invalidated the election if they did not in any way affect the result thereof. Wallis v. Williams, 50 Tex. Civ. App. 623, 110 S. W. 785. It was not pretended in the court below, and is not here, that any one entitled to vote at said election failed to do so because of such alleged irregularities, nor that any one not entitled to do so voted thereat.

[4] Treating said street improvement statute as a valid one, which the city had a right to adopt and did duly adopt, the next question is, did the statute confer on the city the power to validate by a reassessment the invalid assessment made against appellee Childress on account of the paving of Griffith avenue?

Appellee's contention was and is that the question should be answered in the negative because of a provision in the statute as follows:

"This chapter shall not repeal any law, general or special, already in existence, pertaining to the making of such improvements, but the provisions of this chapter, and of resolutions or ordinances passed pursuant thereto shall be cumulative of, and in addition to, such existing laws; provided, that in any case in which a conflict may exist or arise between the provisions of this chapter and the provisions of any law granting a special charter to any city in the state, the provisions of such special charter shall control." Article 1017, Vernon's Statutes.

It was urged in the court below, and is here, that the statute was in conflict with the charter granted to the city of Terrell; that the statute, therefore, was inoperative in said city; and hence that a provision therein as follows, relied on for the purpose, could not be regarded as a sufficient support for the proceedings resulting in the issuance of the certificate dated November 26, 1917:

"The governing body of any city shall be empowered to correct any mistake or irregularity in any proceedings with reference to such improvement, or the assessment of the cost thereof against abutting property and its owners, and, in case of any error or invalidity, to reassess against any abutting property and its owner the cost, or any part of the cost, of improvements, subject to the terms hereof, not in excess of the benefits in enhanced value of such property from such improvement, and to make reasonable rules and regulations for a notice to, and hearing of, property owners before such reassessment." Article 1014, Vernon's Statutes.

In support of the contention it is argued that the charter "provides for the improvement district plan" for paving streets, while the statute "provides an entirely different procedure, which is in conflict with the charter." By "an entirely different procedure," which appellee says the statute provides, we assume he means the "front-foot plan," which the city was by the statute authorized to resort to in making provision for payment of the cost of paving. But we think the statute should be treated as "cumulative of, and in addition to," the provisions in the charter for paving streets, instead of as in conflict therewith; and especially so in view of the fact, which appears from the statement above, that the city was authorized by its charter to resort either to the "district plan" or to the "front-foot plan" in making such provision; for a statute providing a plan the charter also provided for could not for that reason be said to be in conflict with the charter.

[5] The question remaining is this one, were the requirements of the statute so complied with as to authorize the reassessment, or "final assessment," against appellee, covered by the certificate issued November 26, 1917? That assessment seems to have been made after due notice to appellee and after he had had an opportunity to be heard in opposition thereto. It does not appear from anything we find in the record that the sum assessed against appellee was in excess of the sum the city had a right to assess against him, nor, as we view it, does any reason why appellee should not have been required to pay the assessment appear in the record. Gallahar v. Whitley, 190 S. W. 757.

Having reached the conclusion indicated, it follows we are of the opinion the judgment should be reversed so far as it is in appellee Childress' favor against the other parties for a cancellation of the certificates in question, and so far as it denies appellants Carwile and the cement company a recovery against appellee Childress of the amount of the certificate issued November 26, 1917. Therefore the judgment in the respects specified will be reversed. And being of the opinion, further, that the record sent to this court authorized it, judgment will be here rendered that said Carwile and said cement company recover of appellee the sum of $493.50 (that being the amount of the principal sum and interest thereon to March 5, 1918, mentioned in said certificate, and the attorney's fee stipulated for therein and proven at the trial), and interest thereon from March 5, 1918, at the rate specified in said certificate, to wit, 7 per cent. per annum. So far as the judgment is in favor of the city in the controversy between it and said Carwile and said cement company it will be affirmed.