**BAY COUNTY FLORIDA v. STATE OF FLORIDA, and THE TAX PAYERS, PROPERTY OWNERS AND CITIZENS OF BAY COUNTY, INCLUDING NONRESIDENTS OWNING PROPERTY OR SUBJECT TO TAXATION THEREIN.**

24 So. (2nd) 714                                                    January Term, 1946
February 5, 1946                                                        Division A

*Charles R. Isler, Jr., Mercer P. Spear* and *Thomas Sale,* for appellant.

*L. D. McRae,* State Attorney for Fourteenth Judicial Circuit, for appellee.

BUFORD, J:

Bay County filed its petition in the Circuit Court of that county seeking the validation of a bond issue in the sum of $280,000.00, the proceeds to be used for the construction of a hospital.

The Legislature of 1945 by Chapter 23183, a special and local act, which appears to have been passed by the legislature in accordance with the Constitution in that regard, authorized the Board of County Commissioners of Bay County, Florida, to issue time warrants, revenue certificates or bonds as determined by said Board of said county in an amount not to exceed $280,000.00 for the purpose of designing, constructing, equipping and furnishing a general county hospital and authorizing the county by and through its County Commissioners to operate and maintain said hospital and to levy not exceeding 2 mills on the dollar for such purpose. Pursuant to this legislative authority, the County Commissioners of Bay County, Florida, on June 15th 1945, passed and adopted a Resolution calling and providing for a Special Election in Bay County, Florida, on the proposition of issuing the $280,-000.00 of general hospital bonds of said County, and thereupon caused notice to be published in a newspaper published in Bay County, Florida, in the issues of June 18th and 25th and of July 2nd, 9th and 16th, which said notice called for the said election to be held at the various precincts in said County from 7:00 o'clock A. M. until *sundown* on the 19th day of July, 1945. The notice specified that all free-holders who were qualified electors residing in the county should be qualified to vote on the proposition submitted. The notice also provided the place where said election would be held in each of the precincts in said County. The election was held in accordance with the notice.

Thereafter, on the 23rd day of July, 1945, the County Commissioners of Bay County met and canvassed the returns of the said election and entered the result of their findings upon the minutes of the said Board. The County Commissioners found and determined that there were 4816 qualified electors who are free-holders and reside in Bay County. They also found that in said election 2731 of such qualified electors who were freeholders had voted in such election in favor of the issuance of the said bonds and that 76 qualified electors who were freeholders had voted against the issuance of the said bonds and that, therefore, the election carried in favor of issuance of the said bonds.

On August 10th 1945 the County Commissioners met in regular adjourned session and there passed and adopted a resolution providing for the issuance of the $280,000.00 general hospital bonds of Bay County, Florida. Thereafter, on the 22nd day of August, 1945, the petition supra, was filed in the Circuit Court seeking to validate the bond issue in accordance with the resolution authorizing the issuance thereof. The State, through the States Attorney, Hon. L. D. McRae, after due notice, filed answer to the petition in which he made no attack on the validity of the bonds.

On final hearing, pursuant to due notice thereof, the Circuit Court entered an order dismissing the proceedings, saying:

"This Court is of the opinion that in view of the fact that the published Notice of the Election provided that the election was called and ordered from seven o'clock A. M., until Sundown on July 19, 1945, in violation of the provisions of Chapter 22739 Acts of the Legislature of 1945, which was in effect at the time of said election, and which provided that in all elections the Polls shall be opened at seven o'clock A. M., and shall be kept open until seven o'clock P. M., on the same day, that these proceedings be dismissed."

Chapter 22739, Acts of 1945, amended Section 27 of Chapter 4328 Laws of Florida 1895, being Sec. 99.07, Fla. Stats. 1941, to read as follows:

"Section 27. The polls be opened at such voting places at 7 o'clock A. M. on the day of the election and shall be kept open until 7 o'clock P. M. of the same day, the time to be observed for such opening and closing of the polls to be regulated by the customary time in standard use in such locality. The inspectors shall make public proclamation of the opening and closing of the polls, and during the election and canvass of the votes the ballot-box shall not be concealed from the public."

The old Section 99.07, supra, provided, inter alia:

"The polls shall be opened at such voting places at 7 o'clock A. M. on the day of the election, and shall be kept open until sun-down of the same day . . . "

So it is that our disposition of this cause must turn upon our conclusion as to the effect to be given this amended statute. It will be observed that there is nothing in the amendment or in the original statute which provides that if the polls are not opened and closed in accordance with the statute, such non-compliance shall vitiate the election.

In State v. Burbridge, 24 Fla. 112, 3 So. 869, we said:

"The disposition and duty of courts are to sustain popular elections whenever they have been free and fair and it is clear that the voters have not been deprived of their right to vote and the result has not been changed by irregularity."

In Carn et al. v. Moore, 74 Fla. 77, 76 So. 337, it was held:

"An election will not be set aside on purely technical grounds, where no fraud is established, and where no voter was prevented from expressing his choice, or where it is not shown that but for the acts complained of, the result would have been different."

The only irregularity shown to have occurred in this case was that the notice provided that the polls should be open from 7 o'clock A. M. until sundown. We may take judicial cognizance of the fact that Bay County operated under central War Time in July, 1945, and that sundown, according to that time, occurred after 7 o'clock. So no one was deprived of the right to vote by reason of the time which was applied to opening and closing of the polls in this election. It is not shown that the electors did not freely exercise the right of suffrage and there is no intimation that if the statute had been strictly complied with the result would have been different. The law applicable to this matter is stated in 18 Am. Juris. page 321, Section 210, where it is stated:

"Opening and Closing of Polls.—

"Ordinarily the time of opening and closing the polls is definitely fixed by statute. Although there are cases apparently to the contrary, in the large majority of cases which have involved opening and closing polls at different times of the day from those which are prescribed, the view has been taken that the requirements as to opening or closing at a certain time are not mandatory, but are only directory, and that the violation of a requirement of this sort, while consti-

tuting an irregularity, is generally not of sufficient consequence to necessitate setting aside the election or changing the returns of the vote in the particular polling place, at least, in the absence of a showing of fraud or a showing that enough voters were prevented from voting actually to affect the result. This view has been taken not only in cases in which the polls were opened early, but also where they opened late and in cases in which they were closed either before or after the appointed time. Ordinarily, however, this rule applies only to unsubstantial departures from the law. There may be such a radical failure to comply with the provisions of the statute as to lead to the conclusive presumption that injury must have followed. The effect of opening or closing the polls at improper hours should be confined to the particular division or precinct wherein it occurred. Thus, even if the polling place in one precinct is not opened at all and no election is held, the election held in the county is not thereby invalidated, unless it appears that the general result was thereby changed, and the burden of showing such change lies upon the person contesting the result as returned.

"Although it is generally held that an election will not be declared invalid where it is apparent that the votes cast while the polls were not properly open are not sufficient to change the result of the election, it is the majority rule—which, however, is not adhered to in some jurisdictions—that such votes are themselves invalid. Where, however, the polls are closed before the time fixed by statute, a ballot cast and accepted after closing but before the time fixed therefor should be counted."

The authorities cited in support of the text amply support it. To like effect is 29 C.J.S., Election, Sec. 198, as is also 9 R.C.L. page 1107, Sec. 111.

We, therefore, reach the conclusion that the learned Chancellor was in error in holding the election invalid because of the irregularity pointed out.

The decree is reversed with directions that decree be entered validating the bond issue.

So ordered.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., concur.