## CITY GAS COMPANY v. CITY OF CORAL GABLES.
No. 63-C-5169.

Circuit Court, Dade County.
July 22, 1963.

Joseph X. DuMond, Jr., Miami, for plaintiff.

Edward L. Semple, Miami, for defendant.

JOE EATON, Circuit Judge.

Final hearing in this matter was had on June 28, 1963. At the outset of the hearing the court observed that there appeared from the pleadings no bona fide dispute, no genuine adversary proceeding to be heard by the court by way of declaratory decree. Thereupon the defendant city moved to amend its pleadings to take the position that its April 9, 1963, franchise election was invalid; that the proceedings by the city commission between the dates of February 19, 1963, and April 9, 1963, which led to the election, were invalid; that because of such alleged invalidity the city refuses to issue any permits to the plaintiff or to take any steps to grant a franchise to the plaintiff pursuant to the affirmative election results. The court allowed such ore tenus amendment and thereupon proceeded to take testimony on the bona fide dispute before the court. Subsequent to the hearing the court satisfied itself that there is ample authority in Florida for the rendition of a declaratory decree in these premises.

The city's position by way of its amended pleading is that an ordinance previously defeated upon referendum was re-submitted to the voters; that the city did not validly re-enact ordinance 1309 (the one previously submitted to the electors); that the passage of ordinance 1318 "re-submitting" ordinance 1309 was invalid. In short, the city says that ordinance 1309 was dead and that the subsequent approval of such ordinance by the electors could not breathe life into a dead ordinance. Therefore, the city says, it has no authority to issue permits to the plaintiff or to grant the plaintiff a franchise.

The plaintiff petitions the court to inquire into the commission's actions; to determine whether or not the ordinance accepted by the electors of Coral Gables on April 9th is valid; to determine whether or not it has a contract with the city to provide services to the residents of Coral Gables.

Pertinent provisions of the city charter are the following — section 8(16), section 14, section 21(a), and section 21(f). As to section 8(16), the city says there was no valid ratification by the electors upon which it can grant a franchise to the plaintiff. Section 14 provides that no ordinance shall be passed until it has been read on two separate days or until the requirement of such readings has been dispensed with by a four-fifths vote of the members of the commission (it is unrefuted that the ordinance giving rise to the April 9th election was not read on two separate days and it is also unrefuted that the requirement for such reading was dispensed with unanimously by the commission). As to section 21(a), the city apparently takes the position that the provision "but no measure granting or amending any public utility measure or amending or repealing any measure adopted by the electors at the polls shall be regarded as an emergency measure" refers to section 14 having to do with the requirement of reading on two separate days. In other words, by its argument before the court, the city seems to take the position that the ordinance giving rise to the April 9th vote was passed as an emergency measure, the commission having dispensed with the "separate days" reading requirement, and that such cannot validly be done under the city charter. Section 21 (f) is pertinent here for reasons which will be later discussed by the court.

What we are really considering then is whether or not the actions of the commission on February 19th and the proceedings subsequent thereto were void, or, if there were irregularities in the commission's February 19th acts and the proceedings subsequent thereto, whether such irregularities would be such as to invalidate the proceedings and the subsequent election.

The court has concluded after careful consideration that there was no substantial irregularity; that the February 19th proceedings, the notice compliance, and the April 9th election were valid. If there was irregularity, it was in the nomenclature of the ordinance voted upon on April 9th. This is a matter of form and, for reasons later stated, is inconsequential in considering validity or non-validity here.

The following general statements of basic municipal corporation law are so elementary as to require no citation—

A. When an ordinance is passed relating to a matter that is within the legislative power of a municipality, all presumptions are in favor of its validity; if doubt exists as to the power of the municipality to adopt an ordinance, all presumptions are in favor of invalidity. (In the latter instance, all presumptions are in favor of the individual citizen and against the municipality.)

B. A disregard of mandatory charter requirements or matters of substance will vitiate an election. A disregard of directory requirements, that is, mere irregularity which does not prevent a full and free expression of voter opinion and does not affect the result of the election will not invalidate an election.

C. An ordinance which a municipality has no power to enact (example: one levying taxation for a purpose not authorized by the charter) is an act of usurpation and all proceedings under it are void; where the city has the power to pass an ordinance but exercises that power in an unauthorized manner, the ordinance is valid and binding until the party asserting invalidity has overcome, to the court's satisfaction, the presumption of validity.

D. Of course, if an ordinance is void on its face, this means that there is no jurisdiction to pass it in the first instance. (In our case the city had the power to do what it did and the ordinance is valid on its face.)

In considering the questions before us, we must keep in mind that there has been an election and that the people have voted to grant the franchise. The reason for the ruling having to do with mere irregularities is that the courts are anxious rather to sustain than to defeat popular will. As Mr. Justice Terrell expressed it in Willets v. North Bay Village, 60 So.2d 922 — "The people who approved the charter, so far as the record shows, are satisfied. It is their business, and since they are not complaining, we think the election was legally held . . . . Under our form of government sovereignty resides in the people, and since they are not complaining, why should anyone else be heard to complain?" In that case the court found that the election call was irregular, but since the people went to the polls and voted it served the same purpose as if it had been regular. The North Bay Village charter called for a council of five and prescribed that three councilmen constituted a quorum and the presence of three was necessary to transact business. At the time the election was called, North Bay Village had three councilmen and no more and two of them called the referendum.

If there was an irregularity in the proceedings leading up to the April 9th election, the test as to the validity of the election (as has been handed down in many cases) is found in the following language — "An election will not be set aside on technical grounds where no fraud is established and where no voter was prevented from expressing his views or *where it is not shown that, but for the acts complained of, the result would have been different.*" The burden upon the city (*the city challenges the validity*) is to establish that the election was void because of failure

by the commission to fulfill directory requirements or, if there were irregularities, that the result of the vote would have been different had it not been for such irregularities.

For reasons to be later set forth, the court is firmly convinced that no directory requirements were abridged. The city has not attempted to show that the results of the April 9th election would have been different were it not for the irregularity in the nomenclature given to the ordinance adopted in February. For cases pointing out the test outlined above, see 76 So. 337; 77 So. 84; 174 So. 338; 24 So.2d 714; 60 So.2d 922 (Florida cases). See, also, Section 40.14, McQuillan on Municipal Corporation, 3d Ed., Vol. 15; 52 So. 555; 274 P.2d 740; 99 P. 255; 81 P.2d 808; 213 S.W. 308; 110 S.W. 785.

It is important, also, to note that the Coral Gables charter does not prohibit the holding of subsequent elections for the same purpose. Some municipal charters prohibit the holding of subsequent elections for the same purpose within certain designated periods of time. Unless otherwise provided by law a negative vote does not preclude another election having to do with the same subject matter (Section 40.19, McQuillan on Municipal Corporations, 3rd Ed., Vol. 15). Regardless of the name given the ordinance voted upon April 9th, the citizens of Coral Gables were duly notified of the subject matter of the election (incidentally, one of such notices referred to the ordinance being voted upon as ordinance no. 1318) and they expressed their will in much greater numbers than they did the first time out.

The city indicates some concern about the proposition set forth in its charter that no measure granting any public utility measure shall be regarded as an emergency measure. The ordinance which placed the issue before the voters on the April 9th election was not adopted as an emergency measure. The charter clearly states that in order for a measure *to go into effect upon its adoption* it must be declared to be an emergency measure. The ordinance we are discussing here clearly prescribed that it would not be effective until adopted by the people. The effective date of the ordinance was substantially more than 30 days after its passage by the commission in February. Generally speaking, emergency ordinances are those which go into effect immediately upon passage. The only distinction between an ordinary ordinance and an emergency ordinance in the Coral Gables charter is that the former shall not go into effect until 30 days after its passage and the latter may go into effect at a time prior to 30 days after its passage. There is no contest in our case as to the effective date of the ordinance. Therefore, I must assume that the city's reference to "emergency ordinance" has to do with the fact that the council passed the

ordinance without having read it on two separate days. Many charters contain the provision that no ordinance can be passed until read at two regular meetings with at least one week intervening unless it is an emergency measure. Such is not the case in the Coral Gables charter. Whether or not an ordinance is an emergency measure in Coral Gables depends upon the effective date of the ordinance. Further, the charter of Coral Gables provides that four members of the commission may dispense with the requirement that ordinances must be read on two separate days. The commission validly dispensed with the two separate days reading requirement in its meeting in February. The charter requires that in order for the city to grant a franchise for a public utility, such franchise must first be ratified by a majority vote of the electors before the franchise shall become effective. Therefore, the prohibition contained in 21 (a) is there for the purpose of assuring that the voters will have an opportunity to vote on the granting of such franchises before they become effective and that they not be granted upon emergency power. [It should be noted that the other prohibition contained in the same sentence in 21 (a) is also there to guarantee voter sovereignty (if a measure adopted by the electors is to be amended or repealed, such amendment or repeal must be done by the people.)] Emergency measures in Coral Gables have the effect of allowing the expenditure of money between the date the commission makes an emergency ordinance effective and the date of the clerk's certification to the commission that a sufficient referendum petition has been filed. (See sec. 21 (a) of the charter.) In the event the people vote down an ordinance passed as an emergency measure, the voting down of the ordinance *repeals* the ordinance which had become effective upon its passage by the commission. Section 21 of the charter is titled "Initiative and Referendum." The people of Coral Gables have the right to vote even upon emergency ordinances by initiative and referendum. All of the charter provisions having to do with emergency action by the commission have to do with the *effective date* of the ordinance — not with the method of its having been read and adopted by the commission. This is true in most city ordinances in Florida and elsewhere. See Sec. 82, 23 Fla.Jur., Municipal Corporations; 129 So. 912, at p. 914; 79 So. 29; 23 So.2d 492 (note in the latter case that the charter of the City of Panama City provided that no ordinance could be passed until read at two regular meetings *unless it was an emergency measure* or unless this requirement was dispensed with by unanimous vote of the commission with all members present and note further that the Coral Gables charter authorizes the commission to dispense with the two separate readings provision at any time — without reference to whether or not it is an emergency).

The requirement that an ordinance shall not be passed at the meeting at which it is introduced has a purpose. It is intended to prevent hasty and ill-advised legislation. (145 P. 83 at p. 85) As a matter of fact, the purpose of requiring the ordinance to be read at more than one session or meeting is to prevent undue haste and secure deliberation by the legislative body before its final passage. McQuillan on Municipal Corporations, 2d Ed., Vol. 2, p. 634; 182 So. 827 at p. 831 (a Florida case); 83 S.E. 810.

Now it is certainly true that many city charters contain *mandatory* provisions in regard to separate readings. Some charters provide that an ordinance can be passed only by reading it at two or more meetings and *not otherwise*. See 83 S.E. 910. Others mandatorily prescribe that no ordinance, other than an appropriation ordinance, shall be passed on its final reading during the meeting at which it is introduced and provide no method by which the city commission may dispense with such mandatory requirement. See 145 P. 83. Under such charter provisions, failure to comply with the prescribed reading provisions renders ordinances void. Such provisions are jurisdictional in effect. Coral Gables has no such charter. Therefore, there is no irregularity there — much less a void act.

To recapitulate — The commission validly passed an ordinance on February 19th. It was not an emergency ordinance because it could not have become effective prior to April 9th — much more than 30 days from the date of its passage. Though the subject matter of the ordinance had been presented to the people and rejected a short time beforehand, there is no provision in the Coral Gables charter against resubmitting the same subject matter. Valid notice of the April 9th election was given. The people voted and voted affirmatively.

We then come to the only conceivable irregularity in the proceedings. On February 19th, the commission adopted ordinance "1318." The ordinance was presented to the people as ordinance 1309 and that same numbered ordinance had previously been rejected. The people "could not have cared less" what the *number* was. They were interested in the subject matter. To be practical about it, the fact that the ordinance voted upon April 9th bore the same number on the ballot as the previously rejected one may have been advantageous to those persons who took a negative position in regard to the granting of the franchise. The number of the ordinance was a matter of form. When the matter relates mainly to form the courts have adopted a liberal construction. McQuillan on Municipal Corporations, 2d Ed., Vol. 2, section 734 at p. 667, and cases cited thereunder.

The basic question still remains — would the results of the election have been different had the ordinance number been listed as 1318? The city makes no showing that such would have been the case. In Gooch v. Town of Patterson, 52 So. 555, the court poignantly announced — "An error in the name of a thing is never prejudicial if it be clear as to the identity of the thing itself, i.e., where the intention is clearly known." In that case, an election was held under article 232, an article which did not authorize levy of special taxes. However, the town of Patterson had the power to levy special taxes, if the people approved, under another article not listed on the ballot. The court, in effect, said that the important thing was whether or not the people were advised on the subject matter of the election; that it did not matter under what article the proceedings "proported to have carried on" in that the conditions required by the *appropriate* article were substantially fulfilled. The court there wrote that clerical errors in election proceedings are not fatal.

The following cases are just a few of the great many which have been reported which stand for the proposition that irregularities in the method of a city's presentation of referendum questions to the voters do not invalidate elections where it is not established that anyone entitled to vote failed to do so because of such irregularity or that anyone not entitled to vote did so because of such irregularity or that the result of the election would have been different but for the irregularity —

In 213 S. W. 308, the position of the parties challenging validity was that the action taken by the city and placed before the voters "did not limit the qualification of the voters" as was required by the charter. The Texas appellate court did not stop to inquire whether the contention was supported by the testimony in that there was no showing that the result would have been different were it not for such alleged irregularity.

The people of Salt Lake City were advised on the ballot in a referendum that interest and principal of the contemplated water bonds would be paid from revenues obtained from the water system of Salt Lake City. The city had no authority whatsoever to provide such inducement to the voters to vote for the bonds. The Supreme Court of Utah held (99 P. 255) that the city had the power to hold an election upon the question of whether or not the proposed bonds should be issued and that there was no claim that the irregularity affected the result of the election. The court held the referendum to be a valid one.

From 82 P.2d 441, we learn that the people of Crescent City, California, voted in favor of incurring a bonded indebtedness up to $175,000, that being the figure submitted to the electors. The ordinance calling the election provided

for issuing only $166,000 worth of bonds. Not only that, the ordinance itself read that it had been adopted on July 28th. On appeal the court said that it did not appear that the electors were prejudiced or deceived by the first discrepancy noted and referred to the contention having to do with variance in dates as trivial and without merit, a mere clerical error. (In the Crescent City case a provision in the ordinance prescribed that all of its provisions should be liberally construed to the end that the purposes should be made effective. However, as has been pointed out, the courts have been consistently liberal regarding irregularities having to do with form.)

In 1952, the people of Carlsbad, California, voted to incorporate. The notice of the election as published apparently did not contain the date of the election, and the notice as required by the statute was not published "for at least the two weeks prior to the election." The reviewing court found that the pendency of the election and the date thereof were matters of public notoriety. It found the election valid because it was not made to appear that the irregularities were such as to have affected the results of the election or were such as to prevent the voters from freely and fairly expressing their will at the polls.

The case reported in 110 S.W. 785 stands for the same proposition. There the people of Chamber City, Texas, were called upon to decide whether or not the county seat should be moved. The Court of Civil Appeals of Texas held that a failure to give notice of the time and place of the election would not invalidate the election where all the evidence showed that the time and place for holding the election were generally known throughout the county and where there was no evidence that any voter failed to participate and where nothing in the evidence established that the results of the election were affected by such irregularity.

As Justice Terrell expressed it — "Sovereignty resides in the people." In our case, the voters apparently had more notice on the *subject matter* of the election in April than they had in February. There being no prohibition against submitting the same subject matter to the voters on more than one occasion and there being before the court no showing that the results of the April 9th election would have been different had the ballot borne the number "1318" rather than "1309", this court declares that the franchise ordinance passed and adopted by the city commission of Coral Gables on February 19, 1963, and approved by the electors of that city on April 9, 1963, is a valid ordinance in every respect.

There is no showing in this record that the plaintiff has formally accepted the ordinance pursuant to its section 23. However, it is patently clear from the testimony that the City of

Coral Gables has waived formal compliance with section 23. Upon the plaintiff's failure to formally accept within thirty days, the city was in position to cause the election of April 9th not to have been held. The purpose of the specification that acceptance was to have been had within thirty days was to enable the city commission to know whether or not to present the matter to the voters. The matter was presented to the voters. Under the circumstances apparent from this record, it is clear that the plaintiff accepted, though not in writing, within thirty days and thereafter accepted in writing by the filing of this complaint. In any event, the city has waived compliance with the written acceptance and, therefore, the ordinance which has been declared valid here constitutes a contract between the grantor and the grantee, that is, between the City of Coral Gables, a municipal corporation of the state of Florida, and City Gas Company, a Florida corporation.