QUESTION: May the surviving member of an organizational committee, on his own call, properly institute the referendum election contemplated by Ch. 65-1346, Laws of Florida, a special act establishing as a municipality the Village of Buck Head Ridge, subject to referendum approval?
SUMMARY: The surviving member of an organizational committee may, on his own call, properly institute the referendum election contemplated by Ch. 65-1346, Laws of Florida, a special act establishing as a municipality the Village of Buck Head Ridge subject to referendum approval. Your question is answered in the affirmative. Article XI of the special act provides in pertinent part as follows: Section 49. This act shall not become effective until approved by a majority of those qualified electors voting on the question at a referendum election to be held on the call of an organization committee composed of the following three (3) persons: Leland C. Pearce, George F. Hammel and F. D. Johansen. The referendum shall be called and all expenses connected therewith paid for by the Glades county commission which shall direct the Glades county supervisor of registration to do all things not otherwise provided herein, necessary to the holding of a valid referendum election pursuant to article III, section 21, Florida constitution and the applicable laws of the state. * * * * * It is the express intention of the legislature that a valid referendum election be held on the merits of this act in accordance with the requirements of the state constitution, whether or not such requirements have been met by the referendum provisions of this act. Art. VIII, s. 2(a), State Const., formerly Art. VIII, s. 8, State Const. 1885, vests in the legislature the power to establish municipalities. Only the legislature can prescribe the powers and jurisdiction of a municipality, but the taking effect thereof, when so determined by the legislative will, may be made to depend on some stated contingency. Olds v. State,133 So. 641 (Fla. 1931). Under this authority, the legislature enacted Chapter 65-1346 (House Bill No. 2733) establishing Buck Head Ridge as a new municipal corporation, effective upon approval by a majority of qualified electors voting on the question at a referendum election. Article XI of the act provided that the referendum be held on the call of an organization committee composed of three named persons. The question arises from the fact that two of these three persons are now deceased. The paramount law of a municipality is its charter, analogous to the constitution of a state. It gives the municipality all the powers it possesses, unless other statutes are applicable to it. Clark v. North Bay Village, 54 So.2d 240 (Fla. 1951). It follows that for any act of the municipality to be valid, it must comport with the legislative authority found within its charter, here Chapter 65-1346, supra. See Luers v. Kuykendall, 185 So. 448 (Fla. 1938). Furthermore, courts have held that the preliminary steps required for organization of a municipal corporation are mandatory, and the right to enjoy and exercise the franchise granted thereto is dependent upon a substantial compliance with those conditions precedent. Farrington v. Flood, 40 So.2d 462 (Fla. 1949); Daytona Beach Shores v. State ex rel. Membery, 95 So.2d 257 (Fla. 1957). Relative to the present inquiry, it appears wholly immaterial who of the named persons comprising the organization committee initiates the call for the referendum election. The act does not specify that the call be upon a unanimous or majority vote of the three members. Perhaps the drafters envisioned just this contingency in providing a multi-member committee and not specifying a quorum. Assuming, arguendo, that it would be improper for the remaining member to initiate the call for the referendum election, I do not believe that it would invalidate a subsequent properly held election. The election has been authorized by appropriate statutory means. See Treadwell v. Town of Oak Hill,175 So.2d 777 (Fla. 1965). Informalities or irregularities, whether in violation of mandatory or directory provisions relative to an election, do not render the election invalid if they do not affect its result. Willets v. North Bay Village, 60 So.2d 922
(Fla. 1952). It has long been a settled principle of law in this jurisdiction that the will of the people expressed at the polls will not be upset by the courts on the basis of a technicality when the election has been fairly held and there is no charge of fraud, corruption, or coercion shown to have affected the result. Marler v. Board of Public Instruction of Okaloosa County,197 So.2d 506 (Fla. 1967); Brake v. Gissendanner, 206 So.2d 10 (3 D.C.A. Fla., 1968); State v. City of Hollywood, 208 So.2d 609
(Fla. 1968); and City Gas Company v. City of Coral Gables, 22 Fla. Supp. 23 (Cir.Ct. Dade Co. 1963). In my opinion, the decision of our Supreme Court in Willets v. North Bay Village, supra, is dispositive of the present inquiry. The facts are similar to those here presented. It was admitted that when the election was called, North Bay Village had three councilmen and no more, that two of them called the referendum, that the third man was notified of the meeting to make the call but did not attend. It was also admitted that the election was held on the date announced, that it was regular, and that a majority of the electors voted to approve the charter. The issue before the court was whether or not the referendum election was legal and amounted to an approval of the new charter. Our Supreme Court, speaking through Mr. Justice Terrell, treated the issue as follows: It is quite true that the election call, having been made by two councilmen, was not regular, but since the people got the notice and went to the polls and voted, it served the same purpose as if it had been regular. The people who approved the charter so far as the record shows, are satisfied. It is their business, and since they are not complaining, we think the election was legally held, the charter was approved and is in effect. Under our form of government sovereignty resides in the people, and since they are not complaining, why should any one else be heard to complain?[2] It is perfectly clear that the notice given served all the purposes of a legal one. Whether it was a directory or a mandatory prerequisite to a legal election, we do not have to decide. The rule seems approved on good authority that whether mandatory or directory, informalities or irregularities which do not affect the result of an election, will not render it invalid. This is all the more true as to the expression of the popular will when that is satisfied. McQuilan, Municipal Corporations, 2nd Ed. Revised Vol. 2, page 21. Treadwell v. Town of Oak Hill, supra, although distinguishable factually from the situation here presented, is indicative of the result that should be reached. Treadwell involved a class suit on behalf of citizens, electors, and freeholders of the Town of Oak Hill for the reactivization of the town government. The facts were not in dispute. The Town of Oak Hill was created by the legislature in 1925, and the charter had never been abolished although the town government ceased to function in 1930. All of the elected officials were deceased and under the provisions of the charter, only these officials were authorized to call an election for the purpose of filling vacancies. Our Supreme Court relying on an ancient head of equity jurisdiction held that an equity court could, in absence of an adequate remedy for rights of town citizens at law, call an election and appoint a board of elections to conduct same for the purpose of reactivating the municipality. The court reasoned that: The legislature has seen fit to let the municipal government of Oak Hill continue and, while it continues, the citizens of Oak Hill have certain rights concomitant with its existence. These are the rights for which they seek a remedy in equity. A remedy for rights which have no redress at law is an ancient head of equity jurisdiction — probably the most important, the one that has done the most for the orderly growth of the law. * * * * * We have held that elections may be enjoined in proper cases, and we have enjoined the printing upon the general election ballots the special question of recall of slot machine licensing because of the insufficiency of the antecedent petition. Equity is usually reluctant to interfere in any way with an election. The reasons are set out in State v. Tedder, supra: "It has frequently been said that an injunction will not issue as a general rule for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held, and that an election is a political manner as to which courts of equity have, and should have, nothing to do. (Citation omitted.) "But the reason usually given for this general holding that equity is without jurisdiction in election matters is that interference in election controversies might often result in the destruction of popular government, especially when the relief sought is to entirely prevent the holding of an election by the people and thereby to prevent the free expression of the popular will." It is patent that what we are here asked to do will promote, not prevent, popular government. The court, relying on its prior decision in Williams v. Keyes, 186 So. 250 (Fla. 1939), emphasized that courts of equity do have the requisite power in proper cases to require that to be done which in law should be done. The court then remarked: The chancellor below was exercising the extraordinary power of courts of equity to require that to be done which in law should be done when he ordered the holding of an election authorized by appropriate statutory means, the Charter of Oak Hill. The reasoning of the court in Treadwell is persuasive and points unmistakably to the conclusion that the remaining member of the organization committee of Buck Head Ridge may call the referendum election contemplated by Ch. 65-1346, supra. In fact, Treadwell suggests that mandamus may lie for his failure to do so. Certain it is that the call is a prerequisite to give effect to the act, the intent of which — to create the Village of Buck Head Ridge — is clear. It is my opinion based on the authority of Willets v. North Bay Village, 60 So.2d 922 (Fla. 1952), and other authorities and reasons stated herein, that the surviving member of the organization committee to establish the municipality of Buck Head Ridge may, on his call, institute the referendum election provided for in Ch. 65- 1346, Laws of Florida. And again, assuming such call to be irregular, I cannot conceive of its impropriety invalidating a subsequent regular election.