## H. R. WALLIS ET AL. V. H. S. WILLIAMS ET AL.

Decided May 9, 1908.

**1.—Elections—Removal of County Seat—Terrell Election Law.**

The provisions of the general election law (Gen. Laws, 1905, page 520) regulating the manner of holding elections and prescribing the kind of ballot to be used, do not apply to elections held to determine the location of a county seat. Hence, the fact that at such an election two ballots were used, one for and the other against removal of a county seat, instead of both being upon the same slip of paper, did not render the election void.

**2.—Same—Fraud—Promise—Pecuniary Consideration.**

Previous to an election to determine the location of a county seat, a certain number of voters in a precinct agreed to, and did in fact, vote for one of the candidate localities in consideration of the promise of the said locality to contribute money to assist in contesting a certain hog law election theretofore held. Held, that said agreement rendered illegal the votes of the persons entering into said agreement, but did not vitiate the entire election.

**3.—Same—Poll Tax—Payment by Third Person.**

The fact that a poll tax was paid by a person other than the party in whose name the receipt was issued and without written authority to the person making the payment, will not deprive the voter of his constitutional right of suffrage when the payment is made in good faith, with the money of and at the request of the person for whom made.

**4.—Same—Harmless Influence—Evidence.**

To warrant a court in rejecting votes cast at an election, it must appear affirmatively from the evidence that the votes were cast under the influence of some unlawful motive or promise. Surmise or supposition is not sufficient. Evidence considered, and held insufficient to support a contention that voters were influenced by a circular addressed to the negro voters of a county.

**5.—Same—Same.**

Pending an election for the location of a county seat, a circular addressed to the negro voters of the county was put in circulation by persons interested in one of the contesting places, wherein certain alleged reports to the effect that negroes would not be allowed equal rights in said town with the whites if it was made the county seat, were denied, and it was further stated that a certain portion of the town would be set aside for negroes exclusively, where they could purchase homes at reasonable figures and suitable lots for church and school purposes would be donated. Held, there was nothing improper in the circular.

**6.—Same—Ground of Contest—Burden of Proof.**

In contesting the declared result of an election to locate a county seat it was alleged by the contestants that the successful locality was not within five miles of the center of the county. Held, the burden of proving this issue was

upon the contestants, and in the absence of evidence to the contrary it will be presumed that the order of the county judge was legally and properly made.

**7.—Same—Posting Notices—Effect.**
　　A failure to post notices of a county seat election would not render the election void when there was no evidence that such failure in any way affected the result of the election.

　　Appeal from the District Court of Chambers County.　Tried below before Hon. L. B. Hightower.

　　*Stevens & Pickett* and *J. R. Davis,* for appellants.—At all elections held in this State, except those expressly exempted from its operation by the Terrell election law, the official ballot provided for by that law must be used, hence an election to determine the location of a county seat should be held according to the terms of the Terrell law, and the ballot used at such an election should consist of one slip or piece of paper with the form in which the question is submitted printed on each one of such ballots; as in this case as follows:

"For Removal to Anahuac."
"For Remaining at Wallisville."

And headed "Official Ballot."　State v. Conner, 86 Texas, 134; Brigance v. Horlock, 97 S. W., 1060; Clark v. Hardison, 90 S. W., 342; Arnold v. Anderson, 93 S. W., 693; sections 5, 38, 44, 46, 47, 48, 51, 53, 54, 78, 93, 124 and 194 of the Terrell election law of 1905, Acts of 1905, p. 520; art. 6, sec. 4, Constitution of Texas; art. 815, Rev. Stats., 1895.

　　If fraud and conspiracy are shown to have illegally influenced a number of votes cast at an election, and it is possible or likely that others were likewise illegally influenced, the entire election is thereby contaminated, and the honest, true result thereof is rendered doubtful and incapable of fair and correct ascertainment, and the court should so hold and declare the election null and void.　Whaley v. Thomason, 41 Texas Civ. App., 405; art. 1804f, Rev. Stats., 1895; People v. Tool, 86 Pac., 230; Londoner v. People, 15 Colo., 557 (26 Pac., 135); Heyfron v. Mahoney, 9 Mont., 497 (24 Pac., 93); Russell v. State, 11 Kan., 308; Blue v. Peter, 40 Kan., 701 (20 Pac., 442); Morey v. Spencer, 4 Cong. El. Cas., 447.

　　The court erred in its fourth conclusion of law in holding that the poll tax receipts paid by persons other than those in whose names they were issued and who voted by virtue thereof, were legal receipts and qualified those persons as voters, although their poll taxes had not been paid by them in person, but each poll tax had been paid for such persons by another.　Stinson v. Gardner, 97 Texas, 287; secs. 2, 6, 12, 16, 19, 103, 157 and 164, Terrell law, 1905, Acts 1905, p. 520.

　　By law it is expressly made a grave offense for one to lend, contribute, offer, or promise to lend or contribute, any money or thing of value to influence a vote in any manner, and if one violates that law and thus so illegally influences votes, it should annul the votes so cast, and if that kind of unlawful influence is generally exercised and wide-

spread, the entire result is contaminated and rendered incapable of fair ascertainment, and any evidence tending to establish such unlawful conduct, whether direct or circumstantial, is properly admissible. And all the more ought the entire returns be rejected when this sort of unlawful influence is the result of a compact in the nature of a conspiracy which is ever difficult of direct and clearest proof. Jernigan v. Wainer, 12 Texas, 193; secs. 160 and 161, Acts of 1905, 520; 10 Am. & Eng. Enc. of Law, 2d ed., pp. 780 and 786; State v. Purdy, 36 Wis., 222; State v. Olin, 23 Wis., 327; State v. Collier, 72 Mo., 17.

Where voters have been illegally influenced by a promise to donate funds, made at a meeting called for the purpose of raising such funds, and at a later meeting called for the same purpose the same parties are again there who made the former promise of funds, and in this meeting discussed again the same subjects, evidence of these subsequent meetings tends strongly to establish that other voters were also similarly influenced, and thus the fraud contaminates the entire election and renders the true and honest result thereof doubtful and incapable of correct ascertainment, and the court should declare the same null and void. Whaley v. Thomason, 41 Texas Civ. App., 405; Jernigan v. Wainer, 12 Texas, 193; Chamberlain v. Woodin, 2 Idaho, 642.

When it is desired to hold an election to remove a county seat, the geographical center of the county must first be determined by the Land Commissioner, and then, before the result of the election can be declared in favor of removing the county seat on a bare majority of votes, the Land Commissioner, or the County Judge, or other proper authority, should officially ascertain and determine that the place to which the removal is desired is located within five miles of such geographical center, and that the place where the county seat is already located is more than five miles from such center, and unless the said distances are so determined, less than a two-thirds majority of the votes cast is insufficient to remove such county seat. Caruthers v. State, 67 Texas, 132; State v. Alcorn, 78 Texas, 389; Presidio County v. Jeff Davis County, 77 S. W., 278; art. 9, sec. 2, Const. of 1876; arts. 811, 813 and 816, Rev. Stats., 1895.

Where there is no evidence to show that any notice whatever of a special election was posted in each precinct of the county as required by law, and there was no return made by the sheriff, or a constable, of the county showing such posting as required by law, the election should be declared null and void. Swenson v. McLaren, 2 Texas Civ. App., 331; secs. 33 and 31, Acts of 1905, p. 520; Commonwealth v. Barrett, 17 S. W., 336; People v. Hamilton County, 3 Neb., 244.

*Hugh Jackson, Marshall & Marshall, B. F. Louis* and *A. D. Lipscomb,* for appellees.—Section 46 of the Terrell election law of 1905, authorizing the use of other than official ballots where "otherwise authorized by law," and section 194 providing that it shall not "interfere with any special law," shows an unmistakable intent to leave the form of ballot in county seat elections governed by the special provisions of the county seat election law, which authorizes the voter to provide his own ballot.

While freedom of electors is promoted by annulment of elections in which the true preference of the majority is rendered uncertain by acts of violence of individuals or by frauds or wrongs of election officers, either of which operates without the consent of the voter, yet it would be a shocking usurpation for any tribunal—a mere creature of the people—to annul elections on a presumption that the people are sufficiently degraded to have probably been swayed by corrupt influences not shown to have operated on them at all or not, at least, on a sufficient number to have changed the result, and which, of course, could have had no operation on any voter except by his consent. State v. Humphries, 74 Texas, 466; Hanscom v. State, 10 Texas Civ. App., 638; Berry v. Hull, 30 Pac., 946; Ewing v. Duncan, 81 Texas, 230; Stinson v. Gardner, 97 Texas, 287.

Courts sitting for hearing of contests of elections exercise a part of the political power not within the ordinary jurisdiction of courts, and their powers as such special tribunal are strictly limited by the act conferring them, and are not to be extended by implication to the granting of a remedy which is not provided for. Norman v. Thompson, 96 Texas, 250; Galpin v. Page, 18 Wall., 350; Holmes v. Buckner, 67 Texas, 109; Cordray v. Neuhaus, 25 Texas Civ. App., 247.

The constitutional qualification to vote, in case of one possessed of the other qualifications, arises upon his paying his poll tax and obtaining his receipt therefor before February 1st, of the year of the election, without reference to how he has obtained his receipt or made his payment, and no restriction of the constitutional right, in case of those who pay in good faith, could arise by implication from statutory provisions defining the manner in which the payment should be made. Const. of Texas, art. 6, sec. 2, as amended in 1901; Terrell Law of 1905, sec. 2; Stinson v. Gardner, 97 Texas, 287; Cooley's Const. Lim., p. 99, and note 2.

In county seat elections only a legitimate influence is exerted by donations to public, charitable, educational or religious purposes calculated to render the proposed county seat a more convenient or desirable place of residence for the public. Dishon v. Smith, 10 Iowa, 212; Board of Supervisors v. Wayne Circuit Court (Mich.), 64 N. W., 43; Neal v. Shinn (Ark.), 4 S. W., 771; Beham v. Ghio, 75 Texas, 87; Douglass v. County of Baker (Fla.), 2 So. Rep., 781; Hawes v. Miller (Iowa), 9 N. W., 308; Island County v. Babcock (Wash.), 50 Pac., 54; Wells v. Taylor (Mont.), 3 Pac., 261; Berry v. Hull (Kas.), 30 Pac., 943; Walker v. Tarrant Co., 20 Texas, 20. The first case cited is pointed, the others forming indirect support for the proposition.

In a statutory contest of an election the burden of proof is on the contestants, and the only questions to be determined are the issues made by the statement and reply thereto. Art. 1803, Rev. Stats. of Texas.

It matters not whether notices of an election were posted, if the evidence shows the election was actually known of by the qualified voters and participated in by the usual number or more, and there is no evidence that anyone failed to vote for lack of notice. Dishon v. Smith, 10 Iowa, 212; Buchanan v. Graham, 36 Texas Civ. App., 468.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellants against the appellees to contest the declared result of an election held in Chambers County on April 11, 1907, to determine the question of whether the county seat of said county should remain at the town of Wallisville or be removed to the town of Anahuac in said county.

Upon the face of the returns out of a total of 634 votes Wallisville received 244 and Anahuac 390 votes. The returning board declared the result in accordance with these figures to be in favor of Anahuac by a majority of 146 votes.

Upon the trial in the court below 24 votes cast for Anahuac and 2 votes cast for Wallisville at the Stowell box in said county were rejected, because the ballots were not signed by the presiding officer, and 35 votes cast for Anahuac at Black Branch precinct were rejected on the ground of fraud and undue influence. Anahuac having a majority of 87 of the remaining votes, the result as previously declared by the County Judge was confirmed and judgment rendered accordingly.

Two ballots were used at this election. Upon one of these ballots were printed the following words: "Official Ballot for Remaining at Wallisville," and upon the other: "Official Ballot for Removal to Anahuac." These ballots were prepared and furnished the election officers by the proper authority and no other ballots were used in the election.

At a former day of this term we certified to the Supreme Court the question of whether the Act of the 29th Legislature regulating the manner of holding elections and prescribing the kind of ballots to be used, applies to elections held to determine the location of a county seat. The answer of the Supreme Court to this question being in the negative disposes of the first assignment of error, which assails the judgment of the court below upon the ground that all of the ballots used at said election were illegal and void and therefore the election was void. The election not being governed by the statute above referred to, the ballots used were not illegal and the assignment must be overruled. Wallis v. Williams, 101 Texas, 395.

Under the second assignment of error appellants contend that the trial court erred in finding that the illegal influence exerted by the promise of parties favoring Anahuac to contribute funds to assist in contesting the result of a hog law election previously held in said county, only affected 35 votes, and in not holding that said unlawful agreement and promise was such fraud as to contaminate the entire election and render it void.

The facts found by the trial court upon this issue are as follows: "I find that at a meeting held at Black Branch precinct in said county by the voters of said county who were opposed to the adoption of the hog law at an election on that question, as hereinafter mentioned, that C. M. Wilcox presided over this meeting, and the same was held prior to the order of the Commissioners' Court submitting the question of this county seat election, but after the question was under agitation and a petition was being prepared for the purpose of having it called. And I further find that thirty-five persons present at said meeting agreed to vote for the removal of the county seat from Wallisville to

Anahuac, and that they did afterwards so vote at the election that is herein contested; that they were induced to so vote by a promise and agreement publicly made in said meeting with one George (or Joe) Root, to this effect: The said Root, at said meeting, having proposed to those assembled there that the people of Anahuac would aid by contribution of money to a fund for the contest of a stock or hog law election which had been held in this county prior thereto and the result of which was declared on or about January 9, 1907, the fund being so raised being for the purpose of paying the fee of an attorney to represent the parties opposed to said hog law and who were contesting the same; and that a vote was taken in said meeting by which the said 35 voters pledged themselves, after said proposition of support had been made to them in behalf of the people of Anahuac, to vote for Anahuac in the election to be held for removal of the county seat to said place."

The assignment can not be sustained. If it be conceded that the facts found by the trial court authorized the rejection of the votes of the 35 persons who attended the meeting mentioned, there is nothing in the evidence to indicate that persons other than the 35 mentioned agreed to, and did, vote for Anahuac in consideration of the promise of the parties representing Anahuac that the citizens of that place would contribute funds to assist in contesting the hog law election. While the citizens of Anahuac had a right to contribute funds to assist in defraying the expenses of contesting the hog law election, they had no right to make the promise of such contribution conditioned upon any person or number of persons voting for that town for the county seat, but it can not be assumed, in the absence of evidence, that the fact that such contribution was made or promised improperly influenced any of the voters in the county seat election other than the 35 that the trial court found had agreed to vote for Anahuac in consideration of such promised contribution. State v. Humphries, 74 Texas, 466; Hanscom v. State, 10 Texas Civ. App., 638; Bailey v. Fly, 35 Texas Civ. App., 410.

The third assignment complains of the refusal of the trial court to reject the ballots of a number of voters who had not paid their poll tax in person. The facts as to the payment of their poll taxes by the voters whose votes are challenged by this assignment, as found by the trial court, are as follows: "I find that the records of the tax collector and the receipts issued by him, show no irregularity in the payment of the poll taxes by any person; and that those taxes that were shown by his testimony to have been paid by persons other than the parties in whose names the receipts were issued, without written authority to the person making the payment, were paid in good faith, and with the money of, and at the request of, the several persons for whom paid, although I find that the payment of the money was not made by them in person to the tax collector, but was paid for them on their verbal request by another party than themselves."

The right of suffrage conferred by the Constitution does not depend upon the payment of his poll tax "in person" by the voter. All that it requires is that the voter shall pay his poll tax on or before February 1st next preceding the election and that he shall have his receipts there-

for. The statute upon the subject directs that the voter shall pay the tax in person or give a written order therefor, but it does not provide that a failure to obtain his receipt in the manner directed by the statute will disfranchise the voter. Each of the voters in question had complied with the provisions of the Constitution by paying their poll tax and obtaining a receipt therefor, regular upon its face, and the irregularity or mistake of the tax collector and the voter in the manner of making the payment and obtaining the receipt would not deprive the voter of his constitutional right of suffrage.

What we have said in disposing of the second assignment of error disposes also of the questions presented under the fourth and fifth assignments, which complain of the finding of the trial court that the circular issued by the Anahuac Townsite Company to the Colored Citizens of Chambers County was not shown to have improperly influenced any of the voters, and the refusal of the court to allow contestants to introduce evidence to show that in several precincts the colored voters therein voted for Anahuac. There was nothing improper in the circular and if the evidence offered by the appellants had shown that every negro in the county voted for Anahuac it could not be assumed that any of them were improperly influenced in casting their votes by anything contained in said circular.

The sixth assignment complains of the refusal of the trial court to reject the vote of Mat Riban on the ground that the evidence was insufficient to sustain the finding that said Riban was over 60 years of age, and the undisputed evidence shows that he had not paid his poll tax. The rejection of this vote could not have affected the judgment and the question raised by the assignment is immaterial and therefore is not decided.

What has been said under the second, fourth and fifth assignments disposes of the question raised by the seventh assignment, and for the reasons given in disposing of the previous assignments just mentioned the seventh assignment is overruled.

The eighth assignment complains of the judgment on the ground that there is no evidence in the record to sustain the finding that Anahuac is within five miles of the geographical center of Chambers County or that Wallisville is more than five miles from such center, and Anahuac having received less than two-thirds of the votes cast in such election the result of the election could not be legally declared to have been in favor of Anahuac.

It is a sufficient answer to the contention in this assignment that Wallisville is not shown not to be within five miles of the center of the county, to say that the order of the County Judge declaring the result of the election to be in favor of Anahuac is not contested on this ground. The order is contested upon the ground that Anahuac was not within five miles of the center of the county, but upon this issue we think the burden of proof was upon appellants, and in the absence of evidence to the contrary the order of the County Judge declaring that Anahuac had been selected as the county seat would be presumed to have been legally and properly made and entered. We further think that the evidence in the record is sufficient to sustain a finding that Anahuac is within five miles of the center of the county, and if we

are wrong in our conclusions as to the burden of proof upon this issue being upon appellants, the assignment is not sustained by the record.

There is no merit in the ninth assignment. The appellees were not required to show that notices of the election were posted for the time and in the manner required by law. The failure to post the notices would not render a county seat election void when all the evidence shows that the time and place for holding the election was generally known throughout the county and there is no evidence that any voter failed to participate in the election for want of notice of the time and places at which the election would be held, and nothing to create even a suspicion that the failure to post notices, if there was such failure, in any way affected the result of said election. Buchanan v. Graham, 36 Texas Civ. App., 468.

We are of opinion that the judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*