**ROBINSON, Co. Atty., v. BOSTROM et al. (No. 8330.)**

Court of Civil Appeals of Texas. San Antonio. Oct. 30, 1929.

See, also, Snow v. Bostrom, 21 S.W.(2d) 582.

A. B. Crane, of Raymondville, and Seabury, George & Taylor, of Brownsville, for appellant.

R. E. Kirkpatrick, of Mercedes, B. S. Wright, of Raymondville, and Graham, Graham & Graham, of Brownsville, for appellees.

SMITH, J. On April 20, 1929, an election was held in road district No. 1, in Willacy county, to determine if the district should issue bonds in the sum of $400,000 for the purpose of improving the public roads in that district. Upon the face of the returns made by the election officials the proposition was carried by a vote of 164 to 67. C. Bostrom and other property tax payers instituted a contest of the election, naming Hon. Roger Robinson, county attorney, as contestee. Upon a trial of the contest the district judge found that on account of specified irregularities in the election it was "impracticable, if not impossible," to ascertain and determine the true results of the election, and rendered judgment declaring it void and setting it aside. The county attorney, as contestee, has appealed.

The election was held under authority of chapter 3, tit. 22, R. S. 1925, as amended by the Acts of 39th Leg., 1st. Called Sess. (1926), c. 16 (24 Gam. Laws, p. 23 et seq.), in which it is provided that "the manner of holding such elections and canvassing and making the returns thereof, shall be governed by the general laws of the State, when not in conflict with the provisions" of the cited chapter. Id., § 9.

The favorable votes of two-thirds of the property tax paying voters participating in such election were necessary to the adoption of the proposition. Id., § 10. As 231 ballots were shown by the returns to have been cast, it was necessary that 154 be cast in favor of the bonds in order to carry the proposition. Therefore, the returns, 164 for and 67 against, showed an excess of 10 votes over the necessary two-thirds.

The conclusion reached by the trial judge that the election was void because of his inability to determine its true results was based upon findings of fact, in effect, as follows:

1. That, despite the fact that there was organized opposition to the bonds, all the election officers appointed to hold the election were in favor of the issuance of the bonds, and that the county judge, and subsequently the manager of the election, refused to appoint supervisors in response to a written demand made therefor by 80 voters of the "organized opposition."

2. That the court was unable to determine from the evidence how many ballots were printed and delivered to the election officials for use in the election.

3. That 5 aliens and 2 nonresidents of the district voted for the bonds, while 3 others "who were not legally qualified voters voted against" the bonds.

4. That "in the month of December, 1928, and January, 1929, authorizations for the payment of poll tax of a number of voters were obtained by E. M. Sorensen and others, some of which authorizations and poll tax receipts being obtained and placed in the hands of the voters in such manner and under such circumstances as that it is impracticable, if not impossible, to ascertain with any degree of certainty just which of said poll taxes were paid and which were not paid under circumstances which would authorize the holder of said poll tax receipt to cast a legal vote at the election being contested in this suit. And I further find that said questioned voters cast their ballots 'For,' and they were counted 'for' the issuance of the bonds."

5. That the ballots of 17 named voters

"who previous to the opening of the ballot box (upon the trial) testified positively that they had voted against the issuance of the bonds, were found to be marked for the issuance of the bonds."

6. That the ballots of 11 named voters "marked for the issuance of the bonds, and denied by the respective voters as being their ballots, all bear the impression of pencil other than the mark of the pencil scratching out the words reading against the issuance of the bonds," and "That five of the 52 unused ballots bear impression of pencil as above described, indicating that ballots were scratched with unused ballots underneath them; that an inspection of the unquestioned ballots in the box fails to reveal an impression of said pencil impression."

7. "I further find that the field notes of the territory in which the election was sought by the petition upon which it was based, as well as the field notes contained in the order of the Commissioners' Court following a hearing on said petition, as well as the field notes contained in the notice that was published giving notice of said hearing, as well as the field notes included in the order calling the election, as well as the field notes in the notice that was published or posted, giving notice of the holding of said election, were each and all vague and uncertain."

8. "I find that various illegal votes were polled at said election in controversy, and that it was impracticable, if not impossible, to ascertain how many, but I find that the number was sufficient when considered with other facts herein found, to warrant the result of the election being uncertain."

9. "I find that various and sundry legal voters at said election marked their ballots against the bond issue and that their ballots were counted for the bond issue in the returns made by the officers of the election, and I further find that it was impracticable, if not impossible, to ascertain correctly the number of ballots so cast, but I do find that the number was sufficient to materially affect the result of the election."

The court's conclusion of law was that: "As a result of the foregoing finding of fact, it is the opinion of the Court, and I find as a matter of law, that said election should be declared void, and the order of the Commissioners' Court declaring the result thereof should be set aside and held for naught, and I have rendered judgment accordingly."

Obviously, the trial judge rendered this judgment under and by virtue of his construction of article 3054 (a general election statute), in which it is provided: "If it appears on the trial of any contest provided for in article 3045 that it is impossible to ascertain the true result of the election as to the office about which the contest is made, either from the returns of the election or from any evidence within reach, or from the returns con-

sidered in connection with other evidence, * * * the court shall adjudge such election void. * * *"

The effect of these findings is, in short, that there was fraud in the procuring and delivery of poll tax receipts to some of the voters; in the manner of holding the election; in the substitution and manipulation of the ballots cast, and that "various" illegal votes were cast and counted for the bond issue; that it was impossible to determine from the evidence the exact number of poll taxes illegally issued and delivered, or the exact number of illegal votes cast, or of ballots fraudulently manipulated or substituted; but that a sufficient number of the votes and ballots cast and counted were so tainted with such frauds as to materially affect the result of the election, and that it was impossible to determine, from the evidence, the true result of the election. If these findings were warranted by the evidence, then the case is brought within the provisions of article 3054, requiring that the election be held void. Except in the matter of the alleged illegality of the poll tax receipts in question, the evidence was such as in our opinion warrants the court's findings, and it is obvious that if the trial judge could not resolve the ultimate issues into definite findings of specific facts, after being confronted in person by the witnesses (of which there were approximately 150), listening to their testimony, observing their manner of testifying, and after a personal inspection of the original ballots alleged to have been tampered with, then surely a reviewing court may not do so upon the bald record of that testimony, and in the absence of the original ballots, which have not been sent up with the record for inspection on appeal. This court is obliged to take the findings at their face value, and can do nothing but appraise that value. We therefore conclude that those findings approximate that very character of uncertainty contemplated by the Legislature in its enactment of article 3054, wherein it is provided that in contested cases an election shall be declared void by the courts when it "appears * * * impossible to ascertain the true result of the election." The result of this conclusion is that the findings of the trial court support the judgment appealed from.

We particularly uphold the finding concerning the insufficiency of the description of the boundaries of the district as contained in the petition for the election, in the notice of hearing upon the petition, and in the order for the election. The boundaries are sufficiently described in the order of the Commissioners' Court establishing the district, but the description in none of the other three documents is the "same" as that in the original order, as expressly required in section 4 of the act in question, relating to the notice of the hearing upon the petition for the election. The description in the three documents differ

from each other, as well as from the original order, and the variance between the descriptions in the notice and the order for the election, upon the one hand, and the original order, upon the other, is material. In fact, the descriptions in the notice of hearing upon the petition for the election, and in the order for the election, are quite too incomplete, vague, and uncertain, to constitute a sufficient description of the true boundaries of the district to enable a searcher to locate those boundaries upon the ground; and for that reason, if no other, the election was void and must be so declared and set aside.

The trial court found "in the month of December, 1928, and January, 1929, authorizations for the payment of poll tax of a number of voters were obtained by E. M. Sorensen and others, some of which authorizations and poll tax receipts being obtained and placed in the hands of the voters in such manner and under such circumstances as that it is impracticable, if not impossible, to ascertain with any degree of certainty just which of said poll taxes were paid and which were not paid, under circumstances which would authorize the holder of said poll tax receipt to cast a legal vote at the election being contested in this suit. And I further find that said questioned voters cast their ballots 'For,' and they were counted 'for' the issuance of the bonds." Appellants contend in their second and eleventh assignments of error that the evidence did not warrant this finding, and we are constrained to sustain these assignments. The evidence shows that the voters in question in this finding, with possibly one exception, timely and willingly paid their poll taxes, although through others, and that the receipts were issued in favor of, and delivered in one way or another to, the respective voters, who retained them. It is apparent that some of the authorizations were irregularly given by—or obtained from or executed for—the voters, and some of the receipts were irregularly delivered to the voters. But the facts that the voters willingly paid their poll taxes, received their receipts in due form within the time provided by law, and voluntarily exercised the privilege thus secured, are fundamental and controlling, and the voters should not be deprived of their suffrage merely because of a failure to strictly pursue the somewhat devious course laid down by statute, which does not expressly provide that such irregularities shall have that drastic effect. We announce this holding in view of the possibility of other elections during the life of those poll tax receipts. This holding, however, does not affect the appeal since in any event the judgment declaring the election void must be affirmed because of other findings, and particularly because of the fatal defects in the description of the boundaries of the district as

contained in the notice of hearing upon the petition for the election, and in the order for the election. Many other questions are raised in the appeal, but they become immaterial in view of the controlling effect of the insufficient description of the district.

The judgment is affirmed.