**REYNOLDS v. COBB et al.**

No. 13747.

Court of Civil Appeals of Texas. Dallas.
July 19, 1946.

Claud C. Westerfeld, of Dallas, for appellant.

Strasburger, Price, Holland, Kelton & Miller, George Sergeant, Alvin H. Lane, and Albert S. Baskett, all of Dallas, for appellees.

LOONEY, Justice.

Preston Pope Reynolds, in his capacity as citizen, also as candidate for Congress,

brought this suit against Ed Cobb, Assessor and Collector of Taxes of Dallas County, to restrain him from listing and certifying to the respective precinct election judges and officers, for voting purposes, the names of 25,000 persons who had paid their poll taxes in Dallas County, and to prohibit them from voting in the elections, primary, general and special, held during the year 1946. Appellant does not contend that these persons are disqualified to vote in Dallas County; does not deny that they owed poll taxes and had the legal right to pay them; in fact, concedes that these persons paid their poll taxes to persons purporting to be deputy tax collectors of Dallas County and were issued official poll tax receipts on blanks furnished by the Assessor and Collector of Taxes; and, further, that the taxes so paid by them were properly accounted for and remitted to the County Treasurer of Dallas County. The basis of appellant's action is, in substance, that the appointment of these deputies by the Tax Assessor and Collector of Dallas County was not approved by the Commissioners' Court of Dallas County; that the payment of the taxes and the issuance of the tax receipts were at places in the City of Dallas other than the Tax Assessor and Collector's office in the Records Building or other places previously designated by the Tax Collector; in short, appellant contends "that not even the Tax Assessor and Collector himself could write a poll tax valid for voting purposes, if not written at the places provided for in the statute and under the conditions set forth in the statute."

Charles L. Somerville, one of the 25,000 persons who paid poll taxes to one of the reputed deputies, was made a defendant under Procedural Rule No. 42, on the idea that he was a fair and adequate representative of the entire class of 25,000. Mr. Somerville, for himself and those similarly situated, denied appellant's allegation; specially answering, alleged that he was a resident citizen of Dallas County; that he purchased a poll tax from one Percy Harris during the month of January 1946, at the Main Street cafe in the City of Dallas (a place other than the Collector's office or one previously designated); that he paid $1.75 for said receipt; that, to all appearances, the said Percy Harris was a deputy from the Tax Assessor and Collector's Office of Dallas County; praying that appellant take nothing by his suit, etc.

Appellee Ed Cobb, Tax Assessor and Collector of Dallas County, filed a plea in abatement, alleging, as grounds, that appellant failed to show an injury by reason of the facts alleged; that, as a private citizen, he was without capacity to institute and prosecute the suit; and that, as candidate for Congress, the questions raised are premature, in that, appellant cannot know, nor does he allege, whether the persons in question holding the poll tax receipts will vote at all; or, if they should vote, he cannot know, nor does he allege, for whom or in what number they would vote, or whether or not or how, his interest as a candidate for Congress would be prejudiced thereby. Appellee further alleged, as ground for abatement, that appellant's petition shows that the deputies, the validity of whose acts is questioned, were de facto officers; that their acts in collecting taxes and issuing poll tax receipts were official; and that the poll tax receipts issued were valid in all respects. Therefore, prayed that the suit be abated.

Ralph Currie, Chairman of the Dallas County Republican Executive Committee, intervened in the suit in opposition to plaintiff's contention; presented a motion to dismiss on the ground that it appeared that the Tax Assessor and Collector of Dallas County had authorized the deputies in question to collect for and issue poll tax receipts; that this had been done, and the money properly accounted for and delivered to the County Treasurer; therefore, the acts of the deputies were de facto and valid; and that appellant's petition involved a collateral attack on the validity of the action of de facto officers. The Court sustained the plea in abatement and motion to dismiss, and dismissed the suit, to which appellant excepted, gave notice of and perfected this appeal.

The questions hereinafter discussed are properly before us for adjudication. Among others, is this: Did appellant, as a citizen, show a justiciable interest in the subject-matter of the suit? We do not

think so, for the following reasons: The interest of appellant in the questions raised is in no sense different from the interest of any other citizen constituting the general public. It is well settled in this State that actions, such as this, relating to elections or other matters of law enforcement not involving questions of taxation or unlawful expenditure of public funds, in the absence of statutory authority cannot be maintained by a person whose interest is simply that of the public generally. This doctrine was announced by Chief Justice Cureton in Yett v. Cook, 115 Tex. 205, 281 S.W. 837, 841. After an exhaustive examination of the subject, among other things Judge Cureton said: "It is a rule of universal acceptation that to entitle any person to maintain an action in court it must be shown that he has a justiciable interest in the subject-matter in litigation, either in his own right or in a representative capacity. State of Texas v. Farmers' Loan & Trust Co., 81 Tex. 530, 545, 17 S.W. 60, and other cases cited below. Whatever may be the rule in other jurisdictions, there can be no doubt that in Texas an action relating to elections or other matters of law enforcement, not involving questions of taxation or unlawful expenditure of public funds, cannot be maintained by a relator or plaintiff whose interest is only that of the public generally, in the absence of a valid statute authorizing the suit." (Citing numerous authorities.) To the same effect, see the later cases of Allen v. Fisher (By the Commission), 118 Tex. 38, 9 S.W.2d 731; and Dunsmore v. Menefee, Tex.Civ.App., 74 S.W.2d 174.

 In his capacity as candidate for Congress, did appellant show a justiciable interest in the subject matter of the litigation? We do not think so. Appellant's complaint as candidate for Congress is purely anticipatory and premature. He does not allege, in fact, does not and cannot know whether either of the 25,000 persons holding the poll taxes in question will vote at all in the elections, or if they should vote, for whom their votes will be cast. Of course appellant has the right to run for Congress and be declared the nominee of the Democratic Party if he should receive a majority of the votes cast either in the first or runoff primary; however, we do not think the certification by appellee Cobb, Tax Assessor and Collector, of the names of 25,000 allegedly illegal poll tax payers to the precinct election judges and officers, for voting purposes, would prejudice this right, even if it be conceded that the poll tax receipts held by the 25,000 persons involved are void for voting purposes. In the last analysis, the real relief sought by appellant is to avoid being defeated in the primary by illegal votes. This relief, in our opinion, does not require the restraint of any act on the part of the Tax Assessor and Collector; for if illegal votes are cast against appellant, it must be presumed that, if he contests the election, the court will render judgment according to law.

In the case of Hamilton v. Davis, Tex. Civ.App., 217 S.W. 431, 435, appellant, a candidate for the Legislature in McLennan County, brought suit to enjoin the tax collector of said county from issuing poll tax receipts to women, contending that the Act of the 31st Legislature, conferring the right of suffrage upon women in the primary elections, was unconstitutional and void. Disposing of the case, Judge Jenkins of the Court of Civil Appeals at Austin, had this to say: "What civil rights involved herein does he appear to have? The right to run for office, and to be declared the nominee if he receives a plurality of the legal votes cast for candidates for the Legislature in the primary election. Neither of these rights would be interfered with by the issuance of poll tax receipts to female citizens, even though it should be conceded that such female citizens will not be legal voters in such primary. The real and only substantial relief which appellant seeks is to avoid being defeated in the primary by illegal votes. This relief does not 'require the restraint of any act (on the part of appellee) prejudicial to the applicant.' It is available to him if any illegal votes are cast against him; and the act of appellee in issuing poll tax receipts to women will in no wise abridge his right to such relief, for it must be presumed that, if he contests the election, the court will render judgment according to law." In the later case of Leslie v. Griffin, Tex.Com.App., 25 S.W.2d 820, the Commission of Appeals, among other

things, held that "Though courts are clothed with authority to enforce private rights, no citizen, even though he be candidate in election, is given private right to contest returns made by proper officials, until after election is completed." (Syl. 4)

So, we conclude that in neither capacity did appellant show a justiciable interest in the subject-matter of the litigation, hence the court did not err in dismissing the suit.

■ However, on the assumption that appellant's allegations reveal a justiciable interest in the subject matter of the litigation, was he entitled to the relief sought? We do not think so. The deputy collectors, the validity of whose acts is attacked, in our opinion were de facto officers; and the poll tax receipts issued by them to the alleged 25,000 qualified voters are valid for all purposes. These deputies were appointed by the Tax Assessor and Collector of the County, under usual formalities, except their appointments were not approved by the Commissioners' Court. They were furnished with poll tax receipt blanks that were issued when the poll taxes were paid by persons whose qualifications are not questioned, and the taxes thus collected were properly accounted for and duly paid into the public treasury.

■ Appellant concedes that these deputies were de facto officers, authorized to collect taxes, but contends that the poll tax receipts issued by them did not qualify the holders thereof to vote in the elections held during the year 1946. We cannot accept as correct the idea that the official acts of these de facto officers are to be accorded only limited validity; on the contrary, we think their acts and responsibilities, civil and criminal, are the same as though they were de jure officers. This rule is one of necessity and public policy, stated in 34 Tex.Jur., sec. 161, p. 615, as follows: "The doctrine of de facto officers is founded upon policy and necessity and is accepted in order to protect the public and individuals where they may become involved in the official acts of persons discharging the duties of officers without being lawful officers. The law validates their acts as to the public and third persons on the ground that, though not officers in law, they are in fact

officers whose acts public policy requires should be considered valid."

■ It is also held that, in so far as third persons are concerned, the rights and liabilities of a de facto officer are the same as those of officers de jure; and a de facto officer is similarly liable for malfeasance in office; and a person who bribes or offers to bribe a de facto officer, or who resists or assaults such an officer when in the discharge of the duties of the office, is liable to prosecution and may not defend on the ground that he is not one de jure. In other words, a de facto officers may act officially in all respects as if he were a de jure officer. 34 Tex.Jur., sec. 168, p. 626.

A similar situation was presented in Dane v. State, 36 Tex.Cr.R. 84, 35 S.W. 661, 662, where the contention was made that a person was not properly qualified as a deputy county attorney because his appointment was made without the consent of the Commissioners' Court. The county attorney was authorized by statute, by and with consent of the Commissioners' Court, to appoint, in writing, one or more assistants, etc. Commenting upon the situation presented, the court said: "It appears that in this case all of the steps had been taken, except the consent of the commissioners' court, and the record of his appointment had not been recorded in the clerk's office, his appointment being simply deposited there. * * * In our opinion, although the commissioners' court had not at the time consented to the appointment of the said deputy county attorney, he was a de facto officer, and, as such, entitled to administer the oath to the complainant in this case, and his authority could not be attacked in a collateral proceeding. See 5 Am. & Eng.Enc.Law, p. 107, note 1, for collation of authorities."

■ As heretofore shown, appellant does not contend that the 25,000 persons to whom the deputies in question issued poll tax receipts were ineligible; on the contrary, it appears that they were eligible voters, owed the tax and had paid the same; appellant's contention being that the poll tax receipts issued by the deputies were void as a qualification for voting, because of the manner of appointment of the deputies and

the fact that the taxes were paid and the receipts issued at places in the City of Dallas other than the Collector's office or places previously designated for the collection of said taxes. To this we cannot agree; we do not think the poll tax receipt, as evidence of the right to vote, is valid, or invalid, dependent upon the particular place where it was issued; the holder of such a tax receipt, otherwise qualified, is privileged to vote without regard to the place where the tax was paid and the receipt issued. There is no provision of either Constitution or statute declaring that a tax receipt issued under such circumstances is in any sense invalid. All that the Constitution, sec. 2, Art. 6, Vernon's Ann. St., requires, is that the voter shall have paid the tax before offering to vote, and hold a receipt showing that he paid the same before the first day of February next preceding the election.

In the case of Warren v. Robinson, Tex. Civ.App., 32 S.W.2d 871, 872, it appeared that certain voters had not paid for their poll tax receipts, the same having been paid by others. The court said the law does not render invalid poll tax receipts paid by others than the voters, and that a qualified voter has a right to vote, regardless of how he may have obtained the receipt, if he was qualified under the law to obtain the receipt; that the disqualification must attach to the voter himself; and when in possession of a poll tax receipt, he has the right to vote. Also see Wallis v. Williams, 50 Tex.Civ.App. 623, 110 S.W. 785, 786.

We have carefully examined all assignments of error and, failing to find reversible error, affirm the judgment.

BOND, C. J., not sitting.