Houston FIELDS, Appellant,

v.

E. E. COTTEN, Appellee.

No. 6755.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 14, 1964.

Ernest Sample, Beaumont, for appellant.

H. A. Coe, Jr., Kountze, Earl Stover, Silsbee, for appellee.

PER CURIAM.

This is an election contest of a second primary election of the Democratic Party for the office of County Commissioner of Precinct #3, Hardin County. The executive committee of the Democratic Party certified Cotten to be the winner with 462 votes to 460 for Fields. The trial court entered judgment for Cotten finding he had received 459 votes to 457 for Fields.

Appellant Fields' first point is that the trial court erred in counting the votes of Robert Creiger and wife, Charlotte Creiger, because the Creigers were shown not to have the residential requirements to qualify for voting. This is a "no evidence" point and is a question of law for this court to determine by considering only the evidence favorable to the finding of the court that they were qualified voters, and disregarding all evidence to the contrary. We also bear in mind that the burden of proof was upon contestant to prove the Creigers did not have the residential requirements, and also that there is a presumption in favor of the validity of a vote cast. Cavallin v. Ivey, Tex.Civ.App., 359 S.W.2d 910.

The Creigers did not testify. Mrs. Creiger's brother testified that Mrs. Creiger and her family moved to Batson in 1925. When asked how long she had lived there after 1925, he replied:

"A. That's always been what you might say her home; she went to college and taught in Saratoga, but she lived at Batson a majority of the time; she worked some in Beaumont; she went into the Navy and then she came out of the Navy, and it was not too long after that that she married."

He also testified to the following: She always told him she claimed Batson as her home and permanent address. That Mr. and Mrs. Creiger married about 12 years ago. That they paid their poll tax and registered in Hardin County, Batson, ever since they married. That Mrs. Creiger owns an interest in some property in the Batson area. That they do not own a home anywhere. That Mr. Creiger has been a Civil Service employee since they were married and has moved from time to time as his job called. They lived in Houston, Texas, six or eight months. He has neither lived nor worked in Hardin County. When Mr. Creiger's retirement comes up, they plan to move back to Texas. They have always voted in Hardin County in the past

in Precinct #3. That the Creigers have bought their automobile license in Hardin County every year. They give Box 202, Batson, Texas, as their permanent mailing address. Mrs. Creiger's daughter is buried in the family plot in the Batson Cemetery. The old home place is still standing to which she comes every time they come back to Texas. That Mrs. Creiger has two foot lockers and some pieces of small furniture in the home place in Batson.

The Texas Supreme Court in Mills v. Bartlett, 377 S.W.2d 636, announced several principles of law as follow:

"Volition, intention and action are all elements to be considered in determining where a person resides * * *"

"Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined."

"There is no specific length of time for the bodily presence to continue."

The finding of the trial court in its judgment that Mr. and Mrs. Creiger were qualified to vote is supported by the evidence.

Appellant contends the Ethel Brackin vote should not have been counted by the trial court because the evidence conclusively showed she was not a resident of Hardin County for the entire six months period next preceding the election. This is also a "no evidence" point and will be considered in accordance with the rules already mentioned.

Ethel Brackin was called as a witness by appellant. She testified she was 64 years old and a single person. She testified she had been doing practical nursing work since her divorce about 1961. That during the six months period just preceding the election she had visited with her daughter in California from October 1963 until January 1964; then nursed Mr. Hall in Beaumont until April 1964; then April 21, 1964, came to Saratoga to nurse her sister, Mrs. E. E.

Cotten. She testified she had lived in Saratoga from 1938 to 1957 where her children were raised and went to school, that her work took her away at times but she spent all of the time she could in Saratoga when not working. That she did not intend to change her home place each time she changed jobs. She didn't own a home anyplace and had never voted anywhere else except Saratoga. The following question and answer were given:

"Q. Have you ever left Saratoga with intentions of changing your home place from Saratoga to anywhere else?

"A. I never have; I always preferred Saratoga and claim that as my hometown; I know the people there; I'm acquainted there, and always had an interest there, and just home to me."

The testimony in this case is controlled by the case of Jordan v. Overstreet, Tex.Civ. App., 352 S.W.2d 296. The evidence supported the finding of the trial court in its judgment that Ethel Brackin was qualified to vote in Precinct #3 of Hardin County, Texas.

Appellant contends the vote cast by Tex Proctor was void and illegal. This is based upon the argument that he cast an absentee ballot and then married on the same day and was not a resident of Hardin County on the date of the election. Once again this is a "no evidence" point and will be determined accordingly.

Tex Proctor was called as a witness by appellant and gave the following testimony: He voted absentee the morning of May 29th and was married that afternoon. He and his wife have been living in a trailer house in Daisetta, Liberty County, since the day of their marriage. He had been working in Hull since February 1964 and stayed with a sister in Daisetta until his marriage. He claimed Saratoga as his home. Went into the Army and returned to Saratoga. While working in Hull he returned to Saratoga every weekend. The majority of his personal stuff remained in Saratoga. He intended Saratoga to be his home and intends to return there. He owned an undivided interest in the home place in Saratoga. He and his wife set up temporary housekeeping in Daisetta but did not intend to live there permanently. His permanent home was Saratoga. This evidence supported the finding of the court that Tex Proctor was a qualified voter in Precinct #3 of Hardin County.

Appellant contends the court erred in refusing to hold Fred Bear's vote to be void and illegal, because he had not resided in the county for a period of six months before the date of the election.

This is another "no evidence" point and will be determined in the same manner as the preceding points. There is uncertainty as to the dates of occurrence of several items in connection with this voter, but Fred Bear testified that he had lived in Thicket, which is located in Precinct #3 of Hardin County, off and on for 45 years and always claimed it as his home. That he had been operating a grocery store in Dolan, which is in Liberty County, but decided to move back to Thicket about October 15, 1963. He began moving some of his things about November 28, 1963, to his brother-in-law's home in Thicket. That he made a deal to buy a grocery store in Thicket December 9th. That everything was moved by December 15th. December 6th would have been the target date in order to reside in the county six months before the election June 6th. Since December 5th has spent only 3 nights out of Thicket. Stayed at his brother-in-law's home until he bought a house trailer which he and his wife were living in before Christmas. He intended Thicket to be his home in December 1963. This evidence supported the finding of the court that Fred Bear was a qualified voter in Precinct #3, Hardin County.

Appellant contends the trial court erred in failing to find the Noel Guynes vote void and illegal because this voter had not made a written application for a ballot

as required by law. Appellant alleged that Noel Guynes had not signed an application, and had not sworn to such application for a ballot and that it was notarized in Hardin County after the absentee balloting commenced. This application was introduced in evidence. It was dated May 26, 1964, signed Noel Guynes by Geraldine Collins and sworn to before Clarence McNeely by Geraldine Collins. Noel Guynes testified she called the County Clerk's office by telephone from Beaumont and asked them to send her an absentee ballot. She talked to Geraldine Collins. She voted absentee because she expected to be out of Hardin County on election day. She received the ballot by mail and returned it by mail.

This is an application for ballot made before the absentee balloting began and is therefore controlled by Art. 5.05, Subd. 1(ii), V.A.T.S. Election Code. Subd. 2 of Art. 5.05 was amended in 1963 and requires an application for ballot to be in writing and the form prescribed includes an oath to be taken. The most recent case on this point is Mitchell v. Jones, Tex.Civ. App., 361 S.W.2d 224, in which it was held this provision was directory. We hold, as in the Mitchell case, supra, since no fraud was alleged or proven, and the vote was cast, the trial court properly held that a substantial compliance with the law was had. The point is overruled.

Appellant contends the trial court erred in refusing to hold the votes of Mr. and Mrs. T. H. Hendrix to be void because of illegal assistance rendered outside the polling place. Mr. and Mrs. Hendrix voted absentee in person in an automobile outside of the courthouse before the County Clerk. The County Clerk testified he helped them both vote and he did not have any sworn helpers and no one took an oath as an assistant or as an election judge in giving assistance to these voters. He also testified that Mr. and Mrs. Hendrix needed somebody to write for them, and that he did all of the writing on their ballots except for their marks. Both Mr. and Mrs. Hendrix were occupying the same car, one

in the front seat and one in the back, at the time they voted.

Art. 8.13 provides that no more than one person at a time should occupy any one compartment, voting booth or place prepared for a voter, and also describes the aid that may be given a voter. It also provides as follows:

"Where any assistance is rendered in preparing a ballot other than as herein allowed, the ballot shall not be counted, but shall be void for all purposes."

We hold that appellant did not prove these voters received aid other than as prescribed by statute, and that the other provisions of the Election Code covering this situation are directory. Mitchell v. Jones, Tex.Civ.App., 361 S.W.2d 224. The point is overruled.

In appellant's Point 2 he argues that the Creigers did not have valid poll tax receipts; that the court erred in refusing to hold them void and in refusing to subtract their votes from the votes credited to Cotten. Appellant's Point 3 is that the court erred in refusing to rule the Creigers votes illegal and void and refusing to subtract their votes from the votes credited to Cotten because neither Robert Creiger nor his wife had made an application for absentee voting as required by law. Appellant challenged these votes and the burden was on him to prove them to be illegal. They wrote a letter to the County Clerk requesting an absentee ballot, which was sufficient and complied with the Election Code. Their poll tax was paid at Batson, Texas, to Lee Smith, a deputy tax collector, by Robert Yust, Mrs. Creiger's brother, at the written request of the Creigers with money furnished by the Creigers. Art. 5.11 of the Election Code controls this point. It was amended in 1963. There are no cases decided after the 1963 amendment although the amendment cites Fugate v. Johnson, Tex.Civ.App., 251 S.W.2d 792, which is cited by the Supreme Court of Texas in its opinion of May 15, 1957, in

Duncan v. Willis, 157 Tex. 316, 302 S.W.2d 627. Art. 5.11 before the amendment did not provide that the vote would be illegal if its terms were not complied with. The 1963 amendment does not provide that a vote shall be void if its terms are not complied with. Art. 5.13 of the Election Code relating to payment of another's poll tax by a candidate does not provide a vote shall be void if its terms are not complied with. In Fugate v. Johnson, supra, the following is found:

"Contestant claims seventy-two other votes were void because a person other than the voters purchased the poll taxes. Here again we must look to the act of the Legislature. If the Election Code invalidates such votes, it must say so. Newton v. Barnes, Tex. Civ.App., 150 S.W.2d 72. The law is contrary to the contestant's contention. The law does not render poll tax receipts paid by others than the voters invalid, and the qualified voter has the right to vote regardless of how he may have obtained the receipt, if he was qualified under the law to obtain a receipt. The disqualification must attach to the voter himself, and, when in possession of a Poll Tax Receipt, he has the right to vote. Warren v. Robinson, Tex.Civ.App., 32 S.W.2d 871, 872; Reynolds v. Cobb, Tex.Civ.App., 196 S.W.2d 60; Robinson v. Bostrom, Tex. Civ.App., 21 S.W.2d 580; Wallis v. Williams, 50 Tex.Civ.App. 623, 110 S. W. 785."

The ruling of the trial court that the Creigers possessed valid poll tax receipts was correct. There is evidence supporting the rulings of the court. Appellant's Points 2 and 3 are overruled.

Appellant filed a motion to supplement the record by requiring the carrier envelope for the A. E. Payne absentee vote to be certified to this court as a part of the record in this cause. Appellant based this motion upon the authority of Rule 428 of the Texas Rules of Civil Procedure.

Appellant argues that: "If the document in question is one which was before the trial court and examined by him, it may be properly certified as a part of a supplemental record. Willoughby v. Jones, [151 Tex. 435,] 251 S.W.2d 508 (Tex.Sup.Ct., 1952); It has been held many times that the rule for supplementing the record should be liberally construed. Barron v. James, [145 Tex. 283,] 198 S.W.2d 256 (Sup.Ct. 1946)." Counsel for appellant in this court, upon submission of this case, admitted that such carrier envelope was not filed with the district clerk. Hence, Willoughby v. Jones, supra, is inapplicable. Such carrier envelope was not offered in evidence by either party. Since it was not offered in evidence, no objections to the offer could be made and the trial court could not rule upon the offer. It is not a part of the record. Under Rule 428, this court does not have the power to supplement the record as appellant has requested.

The motion is overruled.

Appellant's Points 7 and 8 contend that the votes of Mr. and Mrs. A. E. Payne were void and illegal because they did not make a written application for their absentee ballots, for which reason the court erred in failing to subtract their votes from the votes credited to E. E. Cotten. The pleadings of the appellant in no manner challenge the application for the ballots on the part of Mr. and Mrs. Payne. The applications for the Payne absentee ballots each contained a doctor's certificate. They cast their ballots based upon such applications. The Payne absentee ballots were cast as a result of sickness or physical disability, rather than expected absence from county. These ballots are controlled by Art. 5.05, Subd. 1 (Sec. i). The applications are controlled by Subd. 2 of Art. 5.05 of the Election Code. The presumption is that they are valid and such prevails unless contestant pleaded and proved them illegal. The proof is silent on how the applications were sent to the County Clerk's office. The record contains no proof that

the applications were not mailed to the Clerk. It is presumed that they were mailed to the Clerk. Mitchell v. Jones, Tex.Civ. App., 361 S.W.2d 224, 230. The matters complained of in appellant's Point 7 were not pleaded or proven in the trial court. Appellant's Point 7 is overruled.

Appellant's Point 8 is that the court erred in failing to hold the vote of A. E. Payne void and illegal and to subtract it from the votes cast for E. E. Cottèn because of information supposedly upon the carrier envelope of A. E. Payne which is not in evidence and which was not filed in the trial court with the district clerk. Appellant's Point 8 is overruled.

 Curtis Flowers and Charley Oliver voted absentee in the June 6, 1964, election. Both Charley Oliver's application and Curtis Flowers' application contained the certificate of a doctor, in each case stating that such applicant because of sickness or physical disability would not be able to appear at the polling place on the day of the election. Their respective applications for absentee ballot were not mailed to the County Clerk's office. It was on this ground that their votes were challenged by contestee, which challenge was sustained by the trial court. There is evidence that such applications for absentee ballot were not mailed to the County Clerk's office. The certificate of the doctor in each case supports the finding that each of such applicants, because of sickness or physical disability, could not appear at the polling place on the day of the election. These ballots of Flowers and Oliver both are governed by the provisions of Art. 5.05, Subd. 1(i), which provides in part: "If the application is delivered to the clerk by any method other than by mailing it to him, the ballot shall be void and shall not be counted." Oliver attempted to testify contrary to the facts stated in the doctor's certificate. The terms of the written doctor's certificate were not permitted by the court to be changed by parol testimony of Mr. Oliver. The ruling of the court was cor-

rect. Duncan v. Willis, 157 Tex. 316, 302 S.W.2d 627, gives the reason why a written ballot cannot be varied by parol testimony. The same reasoning applies to an application for an absentee ballot. Appellant's Points 9 and 11 contending such ballots did not have to be mailed to the County Clerk and should be counted are overruled.

 Hazel Standley and Beulah Mae Broom each were permitted to vote at the polls. No issue was made by contestant that they were not qualified voters. On the contrary, appellant alleged them to be qualified voters and that their votes should be counted. Their votes were not counted originally because the election officials considered them mutilated. It appeared that the intention of each voter was clearly ascertainable. Under Art. 6.06 of the Election Code, such votes should have been counted because there is no law expressly prohibiting the counting of a ballot by reason of "mutilation" when the intention of the voter is clearly ascertainable. Mutilation was the only issue urged in the trial court by appellant for not counting the Hazel Standley vote. The trial court properly counted such ballots. Lewis v. Crump, Tex.Civ.App., 34 S.W.2d 616, 617; Honscom v. State, 10 Tex.Civ.App. 638, 31 S. W. 547 (June 6, 1895).

Appellant's Points of Error 12 and 13 urge that Hazel Standley was not a qualified voter and that appellee had no pleading supporting the action of the trial court for which reasons the trial court erred in counting her ballot. Such points of error are overruled.

Appellant's Point 15 questions the legality of all absentee ballots and that it was error to count any absentee ballot. In the alternative, in Points 16, 17 and 18, appellant urges that the court erred in refusing to order recanvassing of the votes cast absentee insofar as the same pertained to the election of County Commissioner, Precinct 3, that the court erred in failing to examine rejected absentee ballots in the possession of the County Clerk and erred

in failing to re-examine the carrier envelopes and jacket envelopes from the absentee ballots which had been counted. Art. 5.05, Subd. 4, of the Election Code fixes a deadline for receiving absentee ballots. This was a county-wide election but in this precinct it was not contested on a county-wide basis. The election itself was county-wide. The deadline for receiving absentee ballots in a county-wide election is as follows:

> "In county-wide elections and in elections less than county-wide where the authority holding the election has provided that absentee ballots shall be counted by a special canvassing board, the marked [absentee] ballot must be mailed back to the clerk in an envelope post-marked not later than midnight of the day preceding election day, and must be received in the clerk's office before one o'clock p. m. on election day."

This section of the Election Code was complied with.

■ There is evidence supporting the following: Absentee ballots cast during the legal time limit allowed for absentee ballots under Art. 5.05, Subd. 16, Election Code, and no others were delivered to the Special Canvassing Board and were counted except for a few rejected for valid reasons. The Special Canvassing Board has the duty of counting the ballots. This was done by the Special Canvassing Board. The ballots were canvassed by the County Democratic Committee. This section of the Election Code was complied with. Due to a misunderstanding of the County Clerk, absentee voting was started under Subd. 4 of Art. 5.05 of the Election Code on the 20th day before June 6, 1964, instead of the 10th day as provided in Subd. 16 of said Art. 5.05. This mistake was discovered about May 27, 1964. Theretofore, some ballots had been mailed to applicants. This was corrected immediately. Every effort was made that those voters involved in the mistake would have an opportunity to cast a legal ballot absentee. No ballots were counted except those complying with Subd. 16 of Art. 5.05. The poll tax receipt of each applicant for an absentee ballot showed the precinct in which the voter was entitled to vote which information was available to those charged by law with handling and counting the absentee ballots. There is evidence that those entitled to vote absentee in this election did vote and those not entitled to have their votes counted did not have their votes counted.

■ The Supreme Court of Texas in Thomas v. Groebel, 147 Tex. 70, 212 S.W.2d 625, said: "The right to vote is so fundamental in our form of government that it should be as zealously safeguarded as are our natural rights. * * * It is sufficient, however, that we apply here the less extreme and well established rule of construction that statutes regulating the right to vote should be given a liberal interpretation in favor of that right." As announced in Mitchell v. Jones, Tex.Civ.App., 361 S.W.2d 224: The purpose of the Election Code is to detect, prevent and punish fraud, to preserve the purity of the ballot box, and to protect the exercise of free suffrage from all undue influence by bribery, tumult or other improper practice. This election contest was hard fought. There is no evidence of fraud or unfairness in the election involving this office. Those charged with holding the election had difficulty in construing the Election Code. Others have had that difficulty. It cannot be denied that counsel for appellant has prosecuted this election contest from its inception with all the ability and vigor at his command. There is evidence sustaining the rulings of the trial court. Accordingly, appellant's Points of Error 15, 16, 17 and 18 are overruled.

Judgment of the trial court affirmed. No motion for rehearing in this cause will be entertained by this court.